221 So.2d 683

**Guy CREEL et al.**

v.

**BAGGETT TRANSPORTATION CO., Inc.**

**3 Div. 241.**

Supreme Court of Alabama.

April 3, 1969.

Rehearing Denied May 1, 1969.

Clifford J. Durr and D. N. Hamilton, Montgomery, for appellants.

Hill, Hill, Stovall & Carter, Montgomery, and Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

COLEMAN, Justice.

Complainants in a suit for an accounting appeal from decree dismissing the cause.

On January 23, 1953, complainants filed their bill of complaint. The complainants are forty-six individual persons. Respondent is a corporation.

Complainants aver that they bring the suit for an accounting and to recover balances due them for services rendered and equipment leased by complainants to respondent under their several contracts made by complainants with respondent.

As we understand the record, complainants are persons who individually and severally own truck tractors and some of them own trailers. They each made individual contracts with respondent whereby complainants leased the tractors and trailers to respondent and agreed to operate, or furnish operators to operate, the leased equipment according to the direction of respondent to haul cargoes over the highways to and from various points in the United States. Respondent procured the business and collected the freight charges from the shippers. Under the contracts, in interstate shipments and when hauling on government bill of lading, the compensation of the complainants was set at a percentage of the earned revenue, varying from 60% to 70%. The contracts provided for weekly settlements to be made on the basis of signed delivery receipts for loads hauled and drivers' logs.

The substance of complainants' claim is that respondent kept the records and did not pay to complainants the full amounts due complainants.[1] Complainants pray that respondent be required to account to each complainant, respectively,[2] and "That

1. Complainants aver:
   ". . . . However, upon the basis of a limited number of checks which Complainants have been able to make or have made of bills of lading, invoices and payments made to Respondent by the United States Government on account of commodities hauled for the United States Government, Complainants verily believe and allege upon information and belief that in many instances Respondent has falsely and fraudulently misrepresented the revenues received by it as aforesaid and, by calculating the percentage of revenues paid to Complainants on a figure far lower than the revenues actually received, has falsely and fraudulently withheld from Complainants and appropriated to its own use large sums of money, to which Complainants are justly entitled."

2. Complainants pray:
   "1. That each of the Complainants have an accounting by Respondent of all revenues received by Respondent on account of commodities hauled or services rendered by said Complainant under his contract or contracts with Respondent, as aforesaid, and of the amounts paid by Respondent to such Complainant pursuant to said contract or contracts."

each Complainant have judgment against the Respondent for any and all amounts found to be justly due him, with interest thereon."

Complainants seek to recover for services rendered by each of them, respectively, for various periods of time between January, 1946, and January 4, 1953.

Respondent's demurrer to the bill was overruled on April 18, 1953.

On May 11, 1953, the court made an order granting complainants' motion to require respondent to produce certain books and records such as bills of lading, invoices, bills rendered, contracts, freight schedules, and correspondence, covering and related to commodities hauled by complainants or any of them. The respondent produced probably a small truck load of records which filled the clerk's office and overflowed into the judge's office. Complainants examined the records under supervision of the court for several days as we understand it.

Respondent filed answer to the bill of complaint on May 18, 1953, and again on July 13, 1953.

The next thing appearing in the record is a motion for pre-trial conference filed by complainants on December 3, 1964. The court set the motion for hearing on December 15, 1964.

On January 18, 1965, respondent filed a motion for reconsideration of its demurrer to the bill of complaint and also a motion to dismiss the suit with prejudice on the grounds, among others, of laches and failure to prosecute the suit with reasonable diligence.

Complainants filed a motion to dismiss respondent's motion to dismiss the suit. Complainants asserted that they had not been guilty of laches or failure to prosecute with reasonable diligence.

On September 22, 1965, the court granted respondent's motion and dismissed the cause with prejudice and taxed costs against complainants.

On October 18, 1965, complainants filed a motion for rehearing and the court set the motion for hearing on December 9, 1965, on which day testimony was heard ore tenus which, together with exhibits, covers approximately two hundred transcript pages.

On March 25, 1966, the court rendered decree overruling the motion for rehearing. Complainants have appealed from the decree of September 22, 1965, and also the decree of March 25, 1966.

The decree of March 25, 1966, overruling the motion for rehearing did not modify the prior decree and, therefore, will not support an appeal nor is it subject to review on assignments of error on appeal from the final decree. Equity Rule 62; Skipper v. Skipper, 280 Ala. 506, 195 So.2d 797, and authorities there cited. Complainants can take nothing by assignments which assert error in the decree overruling the motion for rehearing.

The only decree which complainants can have reviewed is the decree of September 22, 1965. None of the testimony taken on consideration of the motion for rehearing was before the trial court when it rendered the decree of September 22, 1965. We do not think that, in reviewing action of the trial court, we are at liberty to give effect to evidence which was not before the trial court. In any event, we have read the evidence taken on rehearing and find in it no reason to reverse the decree of September 22, 1965, dismissing the cause.

As respondent points out in brief, the record in this case shows nothing from July 13, 1953, to December 3, 1964, a period of eleven years, 4 months, and twenty-one days.

At the time of filing the instant suit, counsel for complainants filed in the United States District Court a similar suit

on behalf of six other men who were the owners of trucks leased by the owners to respondent under contracts substantially identical with the contracts of the instant complainants with respondent. The federal suit was prosecuted to judgment and the plaintiffs therein appealed to the United States Court of Appeals for the Fifth Circuit where the cause was reversed in part and remanded to the district court for further proceedings; see Bynum v. Baggett Transportation Co., 228 F.2d 566, decided January 11, 1956. Complainants appear to argue that delay in the instant case was justified because decision in *Bynum* was necessary to settle the law in the instant case. We are not inclined to agree that decision in *Bynum* was necessary as stated, but, even if that be true, the delay from the date of *Bynum*, January 11, 1956, until December 3, 1964, is three weeks more than eight years and ten months.

There was a second appeal in the *Bynum* case, decided December 27, 1963; Roe v. Baggett Transportation Co., 326 F.2d 298; but *Roe* has to do only with a question of interest; and, in deciding that question, Judge Gewin cites and relies on Grand Bay Land Co. v. Simpson, 207 Ala. 303, 92 So. 789, which was decided in 1922.

We are of opinion that the delay of more than eleven years in prosecution of the instant case is not justified by the pendency of the federal case.

In substance, the instant suit is a cause of action on account or for breach of a written contract. Actions on open account must be commenced within three years (§ 24, Title 7), actions on promises in writing not under seal within six years (§ 21, Title 7), and actions on contracts in writing under seal within ten years (§ 20, Title 7).

This court has said:

". . . . It is, and always has been, the practice of courts of equity to remain inactive where a party seeking their interference has been guilty of unreasonable laches in making his application; and this, irrespective of any statute of limitations.—Story's Eq.Jur. § 1520. The principle is stated with great force and clearness by Lord Camden in Smith v. Clay, Amb. 645 (3 Bro.Ch. 640, note): 'Nothing can call forth this court in activity, but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are discountenanced, and therefore from the beginning of this court there was always a limitation to suits in this court.' The doctrine was stated by Taney, C. J., delivering the opinion of the Supreme Court of the United States in McKnight v. Taylor, 1 How. 161, 168, 11 L.Ed. 86, in this language: 'We do not found our judgment upon the presumption of payment; for it is not merely on presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by the lapse of time and the evidence may be lost.'

"The principal foundations of the doctrine are acquiescence and lapse of time. But other circumstances will be taken into consideration. Thus it is material circumstance that the claim is not made until after the death of him who could have explained the transaction.—16 Cyc. 163, 764(8, 9b); Rives v. Morris, 108 Ala. 527, 18 So. 743; Street v. Henry, 124 Ala. 153, 156, 27 So. 411; Cole v. Birmingham Un. Ry. Co., 143 Ala. 427, 39 So. 403; Mooers v. White, 6 Johns. Ch. (N.Y.) 360; Barnes v. Taylor, 27 N.J.Eq. 259. It has been well said by Davis, J., in McQuiddy v. Ware, 20 Wall.

(U.S.) 14, 19, 22 L.Ed. 311: ' "There is no artificial rule on such a subject, but each case as it arises must be determined by its own particular circumstances." In other words, it would seem that the question is addressed to the sound discretion of the chancellor in each case.— Brown v. County of Buena Vista, 95 U.S. 157, 24 L.Ed. 422. . . . .' Salmon, Adm'r v. Wynn, Adm'r, 153 Ala. 538, 544, 545, 45 So. 133, 134.

In 43 A.L.R. 923 appears an annotation on dismissal of causes for failure diligently to prosecute after instituting suit. A number of cases are cited to effect that the mere institution of a suit does not itself relieve a person from the charge of laches and if he fails in the diligent prosecution of the action, the consequences are the same as if no suit had been begun. Johnston v. Standard Mining Co., 148 U.S. 360, 13 S.Ct. 585, 37 L.Ed. 480; Willard v. Wood, 164 U.S. 502, 41 L.Ed. 531, 17 S.Ct. 176. See 30A C.J.S. Equity § 115, p. 44.

■ Complainants say the doctrine of laches ought not to be invoked against them because it does not appear that respondent has been prejudiced by the delay. We do not agree. Some of the claims involved go back to January, 1946 (Tr. 5), which was almost nineteen years prior to December 3, 1964. As we read the record, the general manager who operated the respondent company from 1946 to 1953 died in 1961. The transcript requires the conclusion that the respondent's records of shipments involved in the instant case are voluminous and that respondent has been compelled to move their records several times. It would be unrealistic to conclude that respondent would not find it more difficult to produce proof in December, 1964, than would have

been the case in the early 1950's. We are not persuaded that the court was compelled to find that respondent had not been prejudiced by the eleven years of delay.

This court has said:

"Nothing can call forth a chancery court into activity but conscience, good faith, and reasonable diligence, and under circumstances consistent with fair dealing with an adversary, as to the property in question. And when, because of the lapse of time, death of interested parties or witnesses, the loss or destruction of papers, or other causes making it no longer safe or free from danger of doing injustice to proceed with a determination of the controversy, laches will be held to have intervened staying the proceeding to judgment as inequitable. Meeks v. Miller, 214 Ala. 684, 686, 108 So. 864; Copeland v. Warren, 214 Ala. 150, 153, 107 So. 94; Hope of Ala. Lodge of Odd Fellows v. Chambless, 212 Ala. 444, 448, 103 So. 54; Moore v. Moore, 212 Ala. 685, 103 So. 892; Sweeney v. Sweeney, 210 Ala. 593, 98 So. 883; Heflin v. Heflin, 208 Ala. 69, 93 So. 719; Corley v. Vizard, 203 Ala. 564, 84 So. 299; Scott v. Scott, 202 Ala. 244, 80 So. 82; Sims v. Riggins, 201 Ala. 99, 77 So. 393; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124." Patterson v. Weaver, 216 Ala. 686, 690, 114 So. 301, 305.

We are of opinion that the decree appealed from can be rested properly on the doctrine of laches and that it is due to be affirmed.

Affirmed.

SIMPSON, HARWOOD, and BLOODWORTH, JJ., concur.