[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 803 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 804 
This dispute involves three parcels of land located in a subdivision known as Chigger Farms. Earl T. Hankins and Patricia Richardson appeal from a summary judgment entered in favor of Cathey Crane, Steve Tucker, and Cheryl Tucker ("the plaintiffs"); that judgment required Hankins and Richardson to remove a driveway and retaining wall ("the driveway") that the trial court determined was encroaching on the plaintiffs' property and a mobile home that the trial court determined violated a subdivision restriction. We affirm in part, reverse in part, and remand.
On August 29, 2005, the plaintiffs filed a complaint in Cherokee Circuit Court against Earl T. Hankins. The complaint stated four counts, only two of which are at issue in this appeal.[1] The first count alleged that the driveway that connected Hankins's house to a public road wrongfully crossed a lot owned by the plaintiffs, who were the developers of Chigger Farms. The second count alleged that Hankins had placed two mobile homes on another lot in Chigger Farms, lot 4, in violation of a subdivision restriction. The plaintiffs later amended their complaint to add Hankins's mother, Patricia Richardson, as a defendant. The amended complaint identified Richardson as the true owner of Hankins's house and of lot 4.
On May 4, 2006, the plaintiffs filed a motion for a summary judgment. Hankins and Richardson filed a response, and the trial judge traveled to Chigger Farms to *Page 805 
view the properties. The trial court also heard oral arguments and accepted the evidence submitted by the parties. On August 31, 2006, the trial court granted the plaintiffs' summary-judgment motion, stating in its order:
 "1. The Plaintiffs' Motion for a Summary Judgment relating to the driveway issue is GRANTED. The evidence is undisputed that the driveway and concrete wall built by the Defendant, Earl T. Hankins, encroaches onto the property of the Plaintiffs. Said encroachment constitutes a trespass, and the trespass is continuing. Defendants shall remove the encroachment within 180 days of the date of this Order.
 "2. The Plaintiffs' Motion for Summary Judgment relating to the issue of two mobile homes on one lot is GRANTED. The plat restrictions state that there shall be `only one residence per lot.' This Court went to the real estate in question and viewed two mobile homes on one lot. One mobile home was being rented by the Defendant, Hankins, and the other home was vacant. However, the evidence is undisputed that the Defendant allows people to stay in said home 2-3 times per month. Said home was set up with electricity and satellite television. It is this Court's opinion that said mobile home constitutes a `residence' and that it is a violation of the restrictions of the subdivision for this home to remain on one lot. Defendant shall remove the mobile home within 60 days of the date of this Order."
Hankins and Richardson filed a postjudgment motion on September 25, 2006. The postjudgment motion was based largely on a newly submitted affidavit from Hankins. Regarding the driveway, Hankins and Richardson argued for the first time that no alternate means of access to the public road existed and that they would be denied the full use and enjoyment of the house. Regarding lot 4, Hankins and Richardson argued that one of the mobile homes was occupied two to three times per month only during the spring and fall fishing seasons; thus, they argued that the trial court's finding that that mobile home was a "residence" was contrary to the evidence. Hankins and Richardson also argued that the trial court had erred in failing to consider certain affirmative defenses they had asserted.
The trial court heard oral argument on the postjudgment motion and, on November 21, 2006, entered an order denying that motion. Hankins and Richardson filed a timely appeal to this court. The case was transferred by this court to our supreme court because this court lacked jurisdiction. The case was subsequently transferred back to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
The record on appeal reveals the following facts.[2] As to the first count, regarding the encroaching driveway, it is undisputed that Richardson owns a house ("the house") and land located at 410 County Road 351 in Leesburg. The house is occupied by Hankins, Richardson's son, who was involved in its construction. The land upon which the house sits is adjacent to property known as "lot B8." The plaintiffs *Page 806 
were the developers of Chigger Farms. They jointly own lot B8 and maintain it as a common lot that residents of Chigger Farms use for access to an adjoining lake. Lot B8 apparently lies mostly in a flood plain, and, therefore, its use is heavily restricted.
It is undisputed that the driveway that connects the house to County Road 351 extends beyond Richardson's land and across lot B8. In or about July 2005, Hankins and the plaintiffs had independent surveys performed. Both surveys show that the driveway significantly encroaches onto lot B8.
The house and driveway were constructed in 2002, by a building contractor who was one of the developers of Chigger Farms, Kenneth Mackey. At that time, Mackey was married to one of the plaintiffs, Cathey Crane. In 2002, Mackey was a joint owner of lot B8; however, it is apparent that Mackey no longer owns an interest in the property. Mackey and Crane are now divorced, and Mackey has never been a party to this action.
Mackey testified at deposition that he knew the driveway crossed lot B8 when he put it in and that he consented to its placement on lot B8. According to Mackey, a survey performed at the time the house was built confirmed that the driveway encroached on lot B8. This survey was not submitted to the trial court, and the record does not demonstrate whether the plaintiffs or Hankins ever saw it. Mackey testified that the driveway did not interfere with the use of lot B8.
Mackey also testified that one of the plaintiffs, Steve Tucker ("Tucker"), knew that the driveway crossed lot B8 and consented to the placement of the driveway when it was being built. The record on appeal indicates that Tucker denied knowingly consenting to the encroachment. According to Tucker, he thought the driveway was going to be close to lot B8, but he was not certain that it actually crossed onto lot B8 until the survey confirmed the encroachment in July 2005.
Regarding Hankins's knowledge of the encroachment, Mackey's testimony conflicted. Mackey first testified that because he was the building contractor for the house, Hankins simply followed his instructions regarding the driveway and did not know that it encroached on lot B8. However, Mackey later testified that he told Hankins that the driveway did in fact encroach on lot B8. According to Hankins's deposition testimony, he did not have a survey performed before the driveway was installed. He stated that he did not know where the boundary line between his mother's property and lot B8 was located and that "the driveway was just installed." According to Hankins's affidavit that he submitted in response to the plaintiffs' summary-judgment motion, he discussed the driveway with Mackey, but at the time it was installed he did not know precisely where the boundary line between his mother's property and lot B8 was located. Hankins stated that he relied on Mackey's judgment in deciding where to place the driveway. Hankins also stated that the plaintiffs never complained about the encroachment until an unrelated dispute arose between Hankins and Tucker. Until they filed their postjudgment motion, Hankins and Richardson did not submit evidence showing that no alternate means of access to the house existed and that they would be denied the full use and enjoyment of the house.
As to the second count, regarding the mobile home, it is undisputed that Richardson owns another parcel of land in Chigger Farms known as "lot 4." It is also undisputed that a restriction recorded on the Chigger Farms subdivision plat and *Page 807 
referenced in the deed to lot 4 states that there shall be only one residence per lot.
Hankins has placed two mobile homes on lot 4. Hankins lived in one mobile home while the house at 410 County Road 351 was being constructed. After the house was completed, Hankins began renting that mobile home to another family. The second mobile home was placed on lot 4 in 2000. Hankins testified that he obtained permission from Mackey and Tucker before he purchased the second mobile home and placed it on lot 4.
According to Hankins, the second mobile home was used primarily for storage and as a place for his friends to stay when they came to visit him and fish in the nearby lake. Hankins stated in his affidavit that the second mobile home was only used by his friends two to three times each month during the spring and fall fishing seasons.
At the summary-judgment hearing, the trial judge stated that when he viewed the properties, he observed that the second mobile home had electricity and satellite television. Additionally, it was undisputed at the hearing that the second mobile home had hot water, a bathroom, beds, chairs, and a table. It did not, however, have a working stove. Hankins testified that he did not consider the second mobile home a "residence" within the meaning of the restriction "because nobody stays in it." During his deposition, Hankins testified as follows:
 "[COUNSEL FOR THE PLAINTIFFS:] It's capable of being a residence, is it not?
 "[HANKINS:] If I wanted to rent it to somebody, I probably could fix it up and rent it, but that's not the case."
The plaintiffs filed "`a motion for an offensive summary judgment, that is, one on behalf of the plaintiff[s]' on [their] own claim." Ex parte Ramsay, 829 So.2d 146,152 (Ala. 2002) (quoting Ramsay v. Grove Hill Mem'l Hosp.Auxiliary, 829 So.2d 142, 145 (Ala.Civ.App. 2000)).
 "A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988). `When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact.' Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999) (citing Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989)). `Substantial evidence' is `evidence of such a weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990)."
Stockton v. CKPD Dev. Co., 936 So.2d 1065, 1073-74
(Ala.Civ.App. 2005). "In the present case, the plaintiff[s] asked for and [were] granted a summary judgment. On a motion for an offensive summary judgment, that is, one on behalf of the plaintiff[s], the plaintiff[s] must conclusively prove every element of [their] claim." Ramsay v. Grove Hill Mem'lHosp. Auxiliary, 829 So.2d at 145.
Regarding the first count, the trial court entered a summary judgment in favor of the plaintiffs, finding that the *Page 808 
encroachment was a trespass and that the trespass was continuing. "Trespass is both a legal action and an equitable action." Storey v. Patterson, 437 So.2d 491, 493
(Ala. 1983). Our supreme court has defined "trespass" as "`[a]ny entry on the land of another without express or impliedauthority."' Central Parking Sys. of Alabama, Inc. v.Steen, 707 So.2d 226, 228 (Ala. 1997) (quoting Foust v.Kinney, 202 Ala. 392, 393, 80 So. 474, 475 (1918)) (emphasis added). This court has stated that a "structure maintained on another's property is a continuing trespass."Alabama Power Co. v. Gielle, 373 So.2d 851, 854
(Ala.Civ.App. 1979).
It is undisputed that the plaintiffs own lot B8 and that the driveway significantly encroaches onto lot B8. As such, it interferes with the plaintiffs' possessory interest in that part of lot B8 over which it encroaches. Therefore, if the encroachment was not expressly or impliedly authorized, the plaintiffs are entitled to a judgment as a matter of law on their trespass claim.
Hankins and Richardson argue on appeal that genuine issues of material fact exist as to whether Tucker was present when the driveway was installed and whether he was aware of the encroachment but never objected to it. This argument adequately challenges the sufficiency of the plaintiffs' prima facie evidence that the encroachment was not expressly or impliedly authorized. The record on appeal shows that Mackey, who was a joint owner of lot B8 at the time the driveway was installed, consented to the placement of the driveway on lot B8. Mackey also testified that Tucker knew that the driveway encroached on lot B8 and consented to its placement. Tucker, however, asserted that he had no knowledge of the encroachment until it was confirmed by a survey in July 2005. This conflicting evidence creates a genuine issue of material fact as to whether the owners of lot B8 authorized the placement of the driveway.
The plaintiffs, therefore, have not conclusively proven every element of their trespass claim. Accordingly, we must reverse the trial court's summary judgment as to that claim. This decision pretermits our need to discuss the issues Hankins and Richardson raise regarding their affirmative defenses of equitable estoppel and laches, as well as their argument, made for the first time on appeal, that they had an easement by necessity across lot B8.
Regarding the second count, the trial court entered a summary judgment for the plaintiffs, finding that both mobile homes on lot 4 were "residences" within the meaning of the Chigger Farms restriction and that the plaintiffs were entitled to equitable relief. It is undisputed that a restriction recorded on the Chigger Farms subdivision plat states that there shall be no more than one residence per lot. It is also undisputed that one of the mobile homes on lot 4 is a residence within the meaning of the restriction.
Hankins and Richardson argue on appeal that the restriction is unenforceable because the term "residence" is ambiguous and vague. They correctly note the following rules:
 "`[R]estrictive covenants are not favored in the law and will therefore be strictly construed by [the] Court. All doubts must be resolved against the restriction and in favor of free and unrestricted use of the property.' Lange v. Scofield, 567 So.2d 1299, 1301 (Ala. 1990). `Only if the intent of the covenant is clear and unambiguous will it be given effect.' Johnson v. Bryant, 350 So.2d 433, 437 (Ala. 1977)." *Page 809 
Greystone Ridge Homeowners' Ass'n, Inc. v.Shelton, 723 So.2d 88, 89 (Ala.Civ.App. 1998).
The only argument that Hankins and Richardson make regarding the alleged ambiguity is that the plaintiffs did not define the term "residence" when drafting the plat restriction. They have not shown on appeal that the restriction, on its face, is patently ambiguous — i.e., that it is unclear or suggests multiple meanings — or that it is latently ambiguous — i.e., that "some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." Thomas v. Principal Fin.Group, 566 So.2d 735, 739 (Ala. 1990). We do not believe that the mere fact that a term is not expressly defined renders it vague or ambiguous, and Hankins and Richardson have not cited any authority that supports such a proposition. Accordingly, we will not reverse the trial court's judgment on the basis that the term "residence" in the restriction is ambiguous.
Hankins and Richardson next argue that genuine issues of material fact exist regarding whether the second mobile home is, in fact, a residence. Hankins and Richardson base their argument on a definition of the term "residence" taken fromBlack's Law Dictionary 1308-09 (6th ed. 1990). That edition of Black's, however, takes its definition from decisions of courts outside this jurisdiction that analyze the term in the context of specific issues such as venue, insurance coverage, and statutory interpretation.[3] Those cases, and consequently the definition in Black's, are concerned primarily with locating the place where an individual lives or is domiciled. Id. Based on that definition of a "residence" as a "[p]lace where one actually lives,"Black's Law Dictionary, supra, Hankins and Richardson argue that the second mobile home was not a residence because no one actually lived there. They rely on Hankins's testimony that the second mobile home was primarily used for storage and that it was only occupied two to three times each month during the spring and fall fishing seasons.
However, the question of where an individual lives or is domiciled does not accurately define the question at issue in this case.[4] The pertinent question is whether a particular structure is a place in which people may reside, not where an individual's dwelling place lies. In Wisneiwski v.Starr, 393 So.2d 488, 489 (Ala. 1980), our supreme court analyzed a case in which the appellant had placed two mobile homes on a lot that was subject to the following restriction: "`there can be placed on said parcel of land no more than one residence or one mobile home. . . .'" (Emphasis omitted.) The supreme court noted:
 "The structure, while not presently being used as a dwelling, is capable of such utilization. It has wheels, a tongue and running gear, and was manufactured with a floor plan for dwelling purposes which it presently retains. A dining room suite was placed therein and has not been removed." *Page 810 
Id. The appellant argued that the restriction was vague and ambiguous and that the "language [was] susceptible of the meaning that the structure in question [was] something other than a `mobile home' when it [was] unoccupied."Id. The supreme court rejected that argument. It reasoned:
 "`". . . While such provisions in deeds are not construed to create restrictions beyond the fair and natural meaning of the words used, read in the light of the circumstances under which they were used, they will be enforced according to their fair and natural meaning, in the absence of fraud or mutual mistake. . . ."'
 "Laney v. Early, [292 Ala. 227,] 231, 292 So.2d 103 [(1974) (quoting Centers, Inc. v. Gilliland, 285 Ala. 593, 595, 234 So.2d 883, 885
(1970))].
 "Covenants restraining the use of real property are strictly construed in favor of the free use of such property; but effect will be given to the manifest intention of the parties when the intention is clear and the restrictions are confined to a lawful purpose within reasonable bounds, and rights created by the covenant have not been relinquished or otherwise lost. Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915
(1966).
 "Here, no fraud or mutual mistake is claimed. We hold, therefore, that the term `mobile home' is descriptive of the structure in question as found by the trial court."
Id.
Similarly to the appellant in Wisneiwski, Hankins and Richardson argue that the second mobile home is something other than a residence when it is unoccupied. We disagree. No fraud or mutual mistake is claimed, and, as stated above, there has been no showing of vagueness or ambiguity. Although Hankins testified that the second mobile home was used primarily for storage, he also testified that it could easily be turned into a long-term residence. Indeed, it is undisputed that the second mobile home is, at the very least, suitable for use as a weekend dwelling. Neither party disputed that the second mobile home had bathroom facilities, hot water, electricity, beds, chairs, and a table. Furthermore, as the trial court noted, beyond the basic utilities and furniture, the second mobile home has satellite-television service. Based on that evidence, the trial court did not err in determining, as a matter of law, that the second mobile home was a residence within the meaning of the restriction and that the plaintiffs had satisfied their prima facie burden.
Because the plaintiffs satisfied their prima facie burden, the burden shifted to Hankins and Richardson "to create a genuine issue of material fact by establishing [their] . . . affirmative defense[s], including all of [the] essential elements" of those affirmative defenses. Ex parteRamsay, 829 So.2d at 153. They raise three arguments on appeal regarding their affirmative defenses. In violation of Rule 28(a)(10), Ala. R.App. P., Hankins and Richardson's brief does not cite any authority in support of their arguments regarding their affirmative defenses. However, out of an abundance of caution, we will consider their arguments below.
First, Hankins and Richardson argue that the plaintiffs' claim is barred by the doctrine of equitable estoppel.
 "In order for the doctrine of equitable estoppel to apply, a party must demonstrate:
 "`"(1) That `[t]he person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or *Page 811 
silence, with the intention that the communication will be acted on';
 "`"(2) That `the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon [the] communication'; and
 "`"(3) That `the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.'"
 "`Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 64 (Ala. 1996), quoting General Electric Credit Corp. v. Strickland Div. of Rebel Lumber Co., 437 So.2d 1240, 1243 (Ala. 1983).'
 "Allen v. Bennett, 823 So.2d 679, 685
(Ala. 2001)."
BSI Rentals, Inc. v. Wendt, 893 So.2d 1184, 1187-88
(Ala.Civ.App. 2004).
 "Estoppel . . . requires activity both by the plaintiff and by the defendant. The plaintiff must have acted so as to evidence an intent not to enforce his rights under the restrictive covenant and the defendant must have acted in reliance upon plaintiffs conduct so as to make it inequitable for the plaintiff to assert his rights."
Tubbs v. Brandon, 374 So.2d 1358, 1361 (Ala. 1979).
Hankins and Richardson have presented evidence to support the first two elements of equitable estoppel. Hankins testified that he obtained permission from Mackey and Tucker before he purchased the second mobile home and placed it on lot 4. Based on that evidence, Hankins and Richardson effectively argue that the plaintiffs acted with an intent not to enforce their rights under the restrictive covenant. Hankins and Richardson also presented evidence indicating that Hankins acted in reliance on Mackey and Tucker's alleged conduct by purchasing the second mobile home and placing it on lot 4.
Hankins and Richardson, however, did not present any evidence to support the third element of equitable estoppel. Regarding the inequity resulting from the plaintiffs' actions, they argue, without citing any evidence, that removing the mobile home "would cause harm to Hankins by placing an additional and unnecessary expense upon him that would have been avoided. . . ." We have searched the record and cannot find any testimony or other evidence to support that statement. Indeed, there is no evidence in the record showing that Hankins and Richardson will be materially harmed. Hankins and Richardson's equitable-estoppel defense therefore fails because they have not presented any evidence of harm resulting from the plaintiffs' actions.
Second, Hankins and Richardson argue that the plaintiffs' claim is barred by the doctrine of laches.
 "To establish the application of the doctrine of laches, [Hankins and Richardson] had to show that [the plaintiffs] delayed in asserting [their] right or claim, that [the] delay was unexcusable, and that [their] delay caused [Hankins and Richardson] undue prejudice. Citibank, N.A. v. Citibanc Group, Inc., 724 F.2d 1540 (11th Cir. 1984); Equal Employment Opportunity Commission v. Dresser Industries, Inc., [668 F.2d 1199 (11th Cir. 1982)]. Classic elements of undue prejudice, for purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and the loss of pertinent records. Equal Employment Opportunity Commission v. Dresser Industries, Inc., supra. To bring the doctrine of laches into operation, it is not necessary that the court should be convinced that the original claim was unjust or had been satisfied, but it is sufficient if the court believes *Page 812 
that, under the circumstances, it is too late to ascertain the merits of the controversy. Meeks v. Meeks, 251 Ala. 435, 37 So.2d 914 (1948)."
Ex parte Grubbs, 542 So.2d 927, 929 (Ala. 1989) (emphasis added; emphasis omitted).
As noted above, Hankins and Richardson have not presented any evidence showing harm as a result of the plaintiffs' actions. They do argue that Hankins would not have purchased the second mobile home had Tucker denied his permission when Hankins asked. Even if this statement is sufficient to show undue prejudice, Hankins and Richardson have not made any showing that it is too late to ascertain the merits of this controversy. Accordingly, their laches defense also fails.
Finally, as to Crane, Hankins and Richardson argue that the claim is barred by the doctrine of unclean hands. Our supreme court has stated:
 "[O]ne `who seek[s] equity must do equity' and `one that comes into equity must come with clean hands.' Levine v. Levine, 262 Ala. 491, 494, 80 So.2d 235, 237 (1955). The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.' Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978)."
J M Bail Bonding Co. v. Hayes, 748 So.2d 198,199 (Ala. 1999). According to Hankins and Richardson, Crane, who owns a house in Chigger Farms, rented part of her house to third parties during the fishing season and, therefore, violated a Chigger Farms plat restriction that prohibits the use of lots for commercial purposes. The limited evidence presented to us in the record, however, does not actually show that such a restriction exists. Accordingly, this defense also fails.
Therefore, as to the plaintiffs' claim related to lot B8, we reverse the trial court's summary judgment and remand the cause for further proceedings consistent with this opinion. As to the plaintiffs' claim related to lot 4, because the plaintiffs satisfied their prima facie burden and because Hankins and Richardson have failed to present sufficient evidence raising genuine issues of material fact as to each element of their affirmative defenses, we affirm the trial court's summary judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
[1] The third count was dismissed. The fourth count, as well as a fifth count that the plaintiffs added in their amended complaint, were asserted exclusively against another party with whom the plaintiffs have settled.
[2] Although some of the evidence the parties relied on was inadmissible, we note that neither party objected to the admissibility of the evidence that the trial court considered in making its determination. Therefore, all such objections are waived. See, e.g., Ex parte Elba Gen. Hosp. NursingHome, Inc., 828 So.2d 308, 314 (Ala. 2001) ("[A] party's failure to object to a potentially defective affidavit offered in support of a motion for summary judgment waives the issue on appeal."). Accordingly, we will consider the evidence regardless of whether it was properly presented to the trial court.
[3] See Black's Law Dictionary 1308-09 (6th ed. 1990) (citing, e.g., Perez v. Health Soc. Servs., 91 N.M. 334, 573 P.2d 689, 692 (Ct.App. 1977); T.P. Labs., Inc.v. Huge, 197 F.Supp. 860, 865 (D.Md. 1961); andWillen-brock v. Rogers, 255 F.2d 236, 237 (3d Cir. 1958)).
[4] This case illustrates the truth of our supreme court's statement in Hoffman v. Tacon, 293 Ala. 684, 686,309 So.2d 817, 818 (1975): "Recourse to dictionary definitions or to decisions of other courts, generally, serves no useful purpose when, from a reading of the restrictions, it is apparent what was intended."