THOMAS, Judge.
 

 Lisa R. Mills (“the mother”) and Robert F. Dailey (“the father”) were divorced in 1987. They had two children, whose physical custody was vested in the mother. Pursuant to an agreement between the parties to remedy omissions in the divorce judgment, the parties agreed that any non-covered medical, dental, optical, and orthodontic expenses (hereinafter referred to as “medical expenses”) for the children would be divided equally; the agreement stated that the father would pay his half of any such expense upon presentment to him by the wife of the bill or receipt evidencing the expense. The father did not pay the medical expenses as required by the parties’ agreement, and, in 1990, the mother secured a judgment incorporating the terms of the parties’ agreement and ordering the father to pay an unspecified amount of medical expenses upon the mother’s presentment of receipts evidencing those expenses. That judgment also required the father to .maintain health insurance on the children; the father’s premium for health-insurance coverage was
 
 *733
 
 used in computing his child-support obligation.
 

 In September 2005, the mother petitioned for a modification of the divorce judgment, seeking postminority educational support for the parties’ younger child; in that petition, she also sought reimbursement for an unspecified amount of unpaid medical expenses and reimbursement for nine years of insurance premiums she had paid because, she alleged, the father had informed her that he could no longer cover the children with health insurance. The father answered the petition, denied owing any medical expenses or premiums, and asserted the defenses of laches, waiver, and estoppel.
 
 [1]
 
 After several continuances by the court, the case was tried on March 2, 2007.
 

 At trial, the mother testified that she had sent receipts evidencing the children’s medical expenses to the father between 1990 and 1992 to no avail. She said that, at that point, she stopped mailing receipts to the father. The father, for his part, denied receiving any receipts evidencing medical expenses incurred on behalf of the children. The father admitted that, during the years between 1990 and 1997, he-received statements from his insurance company indicating that the insurance company had received and/or paid a claim for one or both of the children. The father also admitted that, after 1999, he no longer covered the children with health insurance because of his divorce from his second wife. The father testified that, because the mother had insured the children through her second husband’s employer from 1997 to 2005, he had not received any statements regarding insurance claims for his children’s medical expenses during those years.
 

 The trial court awarded the mother the medical expenses for which she produced receipts for the years between 1990 and 1992. Because the mother admitted that she had not provided the father receipts evidencing the children’s medical expenses after 1992, and because the mother admitted that she had not asked the father to reimburse her for the insurance premiums after the insurance the father had had on the children lapsed in 1999 (although she testified that she had twice asked for such reimbursement in the years between 1997 and 1999), the trial court, relying on the doctrine of laches, declined to award the mother those expenses. The mother appeals.
 

 The mother argues that the doctrine of laches should not be applied to bar her from recovering the medical expenses that the father was required to pay pursuant to the parties’ agreement amending the divorce judgment because, she asserts, the mere passage of time without evidence of prejudice to the father resulting from the delay is insufficient to establish the defense. The father argues otherwise, stressing that the mother knew that she had a right to reimbursement of one-half of the medical expenses incurred on behalf of the children, provided that she sent the father receipts evidencing those medical expenses, and that she admittedly did not send the father any receipts, sat on her rights, and did nothing to recover medical expenses incurred as far back as 1992. Both parties argue on appeal several cases supporting their respective positions.
 

 
 *734
 
 Many cases have explained the doctrine of laches. As the father points out, some cases have stated that “the principal factors in determining whether to apply the doctrine of laches are acquiescence and lapse of time.”
 
 Roden v. Walker,
 
 535 So.2d 130, 132 (Ala.1988). That is, “ ‘[m]ore specifically, [laches] is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them.’ ”
 
 Dunn v. Ponceler,
 
 235 Ala. 269, 276, 178 So. 40, 46 (1937) (quoting 21
 
 Corpus Juris,
 
 pp. 210, 211). For example, this court has stated:
 

 “Laches is a doctrine of equity. In speaking of the doctrine, Chief Justice Taney said in the case of
 
 McKnight v. Taylor,
 
 42 U.S. (1 How.) 161, 168, 11 L.Ed. 86 (1843):
 

 “ ‘We do not found our judgment upon the presumption of payment; for it is not merely on presumption of payment or in analogy to the statute of limitations that a court of chancery refuses to lend its aid to
 
 stale
 
 demands.
 
 There must be conscience, good faith and reasonable diligence to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by the lapse of time and the evidence may be lost’
 

 “The above quotation appeared in the opinion of the Alabama Supreme Court in the case of
 
 Salmon, Administrator v. Wynn, Administrator,
 
 153 Ala. 538[, 544], 45 So. 133[, 134] (1907), and was repeated in that court’s opinion in
 
 Creel v. Baggett Transportation Co.,
 
 284 Ala. 47[, 50], 221 So.2d 683[, 686] (1969). The court in
 
 Creel
 
 also repeated other statements and quotations from
 
 Salmon
 
 such as:
 

 “
 
 ‘The principle [principal] foundations of the doctrine are acquiescence and lapse of time.
 
 But other circumstances will be taken into consideration. Thus it is material circumstance that the claim is not made until after the death of him who could have explained the transaction. (Citations omitted.) It has been well said by Davis, J., in
 
 McQuiddy v. Ware,
 
 20 Wall. (U.S.) 14, 19, 22 L.Ed. 311 [ (1873) ]: “There is no artificial rule on such a subject, but each case as it arises must be determined by . its own particular circumstances.” In other words, it would seem that the question is addressed to the sound discretion of the chancellor in each case.’ ”
 

 Williamson v. Shoults,
 
 423 So.2d 874, 876 (Ala.Civ.App.1982) (emphasis on “stale” original; other emphasis added). Thus, the father argues that laches in the present case arises out of the mother’s awareness of her duty to supply him receipts and her delay in doing so.
 

 The mother, however, argues that laches does not arise from mere delay but instead requires a showing of prejudice or harm caused by the delay,
 
 see, generally, Hankins v. Crane,
 
 979 So.2d 801, 811 (Ala.Civ.App.2007), or a showing that the claim has become “stale” such that, due to the passage of time and loss of evidence, a trial court cannot ascertain the merits of the controversy without engaging in speculation or conjecture.
 
 See, generally, Ex parte Grubbs,
 
 542 So.2d 927, 928-29 (Ala.1989). Our supreme court has stated:
 

 With regard to laches, we quote the following from
 
 Hauser v. Foley & Co.,
 
 190 Ala. 437, 440, 67 So. 252, 253 [(1914)]:
 

 
 *735
 
 “1 “The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living judge:
 
 ‘Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.
 
 The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.’ Stiness, J., in
 
 Chase v. Chase,
 
 20 R.I. 202, [203-04,] 37 A. 804, [805 (1897) ].’ 5 Pom. Eq. Jur., § 21.
 

 “ ‘
 
 “Laches, as has been well said, does not, like limitation, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforced
 
 — an
 
 inequity founded upon serme change in the condition or relation of the property, or the parties.
 
 —Galliher
 
 v. Cadwell,
 
 145 U.S. 368 [12 S.Ct. 873, 36 L.Ed. 738] [(1892)].”
 
 First Nat. Bank v. Nelson,
 
 106 Ala. 535, [542,] 18 So. 154[, 155 (1895) ].’ See, also,
 
 Wise v. Helms,
 
 252 Ala. 227, 230, 40 So.2d 700[, 702 (1949) ];
 
 Meeks v. Meeks,
 
 251 Ala. 435, 437, 37 So.2d 914[, 916 (1948) ];
 
 Fanning v. Fanning,
 
 210 Ala. 575, 576, 98 So. 804[, 805 (1924) ].”
 

 Sykes v. Sykes,
 
 262 Ala. 277, 281-82, 78 So.2d 273, 277 (1954) (emphasis added).
 

 More recent cases have required the person asserting the defense of laches to show (1) that the claimant delayed in asserting his or her right, (2) that the delay was inexcusable, and (3) that the delay caused the person asserting the defense undue prejudice.
 
 Hankins v. Crane,
 
 979 So.2d 801, 811 (Ala.Civ.App.2007). Our supreme court’s explanation of the doctrine is instructive:
 

 “ ‘Laches’ is defined as neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar. See
 
 Black’s Law Dictionary
 
 787 (5th ed.1979). Laches is an equitable doctrine designed to prevent unfairness to a defendant ... due to a plaintiffs ... delay in filing suit, in the absence of an appropriate statute of limitations.
 
 Equal Employment Opportunity Commission v. Dresser Industries, Inc.,
 
 668 F.2d 1199 (11th Cir.1982).
 
 It is based on the public policy discouraging stale demands and is not based upon mere lapse of time. It is principally a question of the inequity of permitting a claim to be enforced where some change in condition has taken place that would make the enforcement of the claim unjust. Davis v. Alabama Power Co.,
 
 383 F.Supp. 880 (N.D.Ala.1974), affirmed, 542 F.2d 650 (5th Cir.1976), affirmed, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). It is designed to prevent unfairness caused by a party’s delay in asserting a claim or by his failure to do something that equity would have required him to do.
 
 Sims v. Lewis,
 
 374 So.2d 298 (Ala.1979);
 
 United States v. Olin Corp.,
 
 606 F.Supp. 1301 (N.D.Ala. 1985);
 
 Golightly v. Golightly,
 
 474 So.2d 1150 (Ala.Civ.App.1985).”
 

 
 *736
 

 Ex parte Grubbs,
 
 542 So.2d at 928-29 (emphasis added).
 

 We will first consider whether the trial court erred in applying the doctrine of laches to preclude the mother’s recovery of health-insurance premiums she paid after she was told that the father would no longer be able to provide such coverage. Although we agree with the trial court that the mother should not be able to recover insurance premiums she paid between 1997 and 1999, when the father still had the children covered under his second wife’s health-insurance policy, we do not agree that the mother cannot recover those premiums she paid in the years after the father’s insurance coverage was terminated in 1999. The original divorce judgment ordered that the father pay child support. In 1990, the trial court’s modification and enforcement judgment ordered that the father should maintain health insurance on the children. The health-insurance premium the father paid was deducted from his overall child-support obligation under Rule 82(B)(7)(c), Ala. R. Jud. Admin. In situations in which “a child support order providing for an insurance adjustment is in effect, [and] such insurance coverage is allowed to lapse, is terminated, or otherwise no longer covers the children for whose benefit the order was issued,” Rule 32(B)(7)(d) empowers a trial court, among other things, to consider the amount of the insurance premium deducted from the obligor’s child-support obligation “to be an arrearage in the obligor’s total child support obligation.” Although the decision whether to reduce the amount of the unpaid insurance premiums to an arrearage is a matter of discretion for the trial court,
 
 see
 
 Rule 32(B)(7)(d), Rule 32(B)(7) supports the conclusion that the insurance premium that the father was required to pay by the 1990 modification judgment is considered part of his overall child-support obligation. Alabama law has long held that the defense of laches is inapplicable to actions enforcing child-support obligations.
 
 Ex parte State ex rel. Lamon,
 
 702 So.2d 449, 451 (Ala.1997);
 
 Morgan v. Morgan,
 
 275 Ala. 461, 464, 156 So.2d 147, 150 (1963);
 
 Trimble v. Trimble,
 
 628 So.2d 789, 789 (Ala.Civ.App.1993); and
 
 Davis v. State ex rel. Sledge,
 
 550 So.2d 1034, 1035 (Ala.Civ.App.1989);
 
 see also Solinger v. Solinger,
 
 57 Ala.App. 225, 228, 327 So.2d 721, 723 (1975) (holding that laches did not bar an action seeking the determination of the amount of a former husband’s arrearage of child support and alimony where the payments had been due as much as 20 years earlier). We reverse the trial court’s judgment insofar as it precludes recovery of the health-insurance premiums paid by the mother between 1999 and 2005.
 

 We now turn to the question whether the trial court properly applied the doctrine of laches to preclude the mother’s recovery of one-half of the medical expenses incurred by the children between 1992 and 2005. Because the requirement that the father be responsible for one-half of the medical expenses is not part of his child-support obligation, the principle that the doctrine of laches is inapplicable to suits seeking enforcement of child-support obligations does not apply to those expenses. However, we have had the opportunity to consider whether the defense of laches should bar enforcement of other obligations arising under a divorce judgment.
 
 See Weathers v. Weathers,
 
 508 So.2d 272 (Ala.Civ.App.1987) (refusing to apply laches to a former husband’s claim requesting construction and enforcement of part of the parties’ settlement agreement regarding his portion of the equity in the former marital residence when the former husband had waited for four and one-half years before instituting suit), and
 
 Stubbs v. Puls,
 
 429 So.2d 1071 (Ala.Civ.
 
 *737
 
 App.1983) (refusing to apply laches to bar the former wife’s enforcement of her former husband’s obligation to pay her $5,000 upon the sale of the former marital residence pursuant to the divorce judgment when the wife had waited five years before seeking said enforcement).
 

 In
 
 Stubbs,
 
 the former wife and the former husband had divorced in 1976.
 
 Stubbs,
 
 429 So.2d at 1072. Pursuant to an agreement incorporated into the parties’ divorce judgment, the former husband was required to pay the former wife $5,000 as a property settlement or alimony in gross at the time the former marital residence was sold.
 
 Id.
 
 at 1072, 1073. When the house sold in March 1977, the former husband did not pay the former wife the $5,000.
 
 Id.
 
 at 1073. The former wife had not made mention of the $5,000 since the sale of the house in March 1977 until she asserted the claim for its payment in her amended answer to the former husband’s child-support-modification petition in July 1982.
 
 Id.
 
 The trial court determined that the former wife “ ‘did not use reasonable diligence to collect this debt and therefore should be barred from doing so at this time.’ ”
 
 Id.
 

 The
 
 Stubbs
 
 court reversed the trial court’s judgment applying laches to bar the former wife’s claim.
 
 Id.
 
 at 1075. Although the
 
 Stubbs
 
 court relied in part on both
 
 Morgan
 
 and
 
 Solinger,
 
 it also relied on the explanation of laches set out in
 
 Williamson,
 
 as quoted above.
 
 Id.
 
 at 1073-75. The court further explained its decision as follows:
 

 “In the present case, the only fact upon which the doctrine of laches could be based consists of the lapse of five years, from March 1977 to July 1982, without any effort by [the former wife] through the court to collect the debt from [the former husband].
 
 That, without more, is inadequate to bar the debt because of laches. We do not find any circumstances which would render it inequitable to enforce the divorce judgment. The record does not disclose that the delay caused any loss of evidence whereby the enforcement of the judgment would be conjectural thereby making justice difficult to administer as laches was defined in the
 
 Williamson
 
 case,
 
 supra. Both
 
 Morgan
 
 and
 
 Soling-er, supra,
 
 disallow any laches prohibition against the attempt to collect the $5,000 debt. The same reasoning, logic and legal principles of those cases would be applicable to the present litigation.”
 

 Id.
 
 at 1075 (emphasis added).
 

 Turning to the present case, we must consider whether the lapse of time resulted in prejudice to the father,
 
 see Hankins,
 
 979 So.2d at 811, or whether, due to the mother’s delay, enforcement of the requirement that the father be responsible for one-half of the children’s medical expenses would require the trial court to engage in conjecture to arrive at a judgment.
 
 See Stubbs,
 
 429 So.2d at 1075. First, however, we must disagree with the application of the doctrine of laches to the mother’s claims for reimbursement arising from medical expenses incurred in the five years preceding the filing of her petition in 2005, i.e., 2000-2005. Under both
 
 Weathers
 
 and
 
 Stubbs,
 
 a five-year delay in seeking enforcement of an obligation in a divorce judgment was found not to be a sufficient basis for the application of the doctrine of laches.
 

 “Classic elements of undue prejudice, for purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and the loss of
 
 pertinent
 
 records.”
 
 Ex parte Grubbs,
 
 542 So.2d at 929 (emphasis added). The father points out that the mother admitted to losing receipts when she moved in
 
 1991.
 
 Incidentally, we
 
 *738
 
 note that any records lost in 1991 would necessarily have had to have been related to medical expenses incurred before 1992, the last year for which the father was held responsible for payment of his half of those expenses; thus, we cannot imagine how the loss of
 
 irrelevant
 
 records could amount to the prejudice necessary to require the application of the doctrine of laches to preclude the recovery of medical expenses incurred between 1992 and 2005. However, because the mother responds to the father’s argument and appears to indicate that she may well have lost other, more recent, pertinent records relating to the medical expenses of the children, and because the record reflects that the mother resorted to the use of nonparty subpoenas to gather certain information to prove her payment of the children’s medical expenses, we will consider the father’s assertion that the mother’s loss of records establishes the requisite prejudice. The mother contends that any loss of records inured to
 
 her
 
 detriment, not to the father’s, because she sought reimbursement for one-half of only those expenses she was able to prove. We agree with the mother that the loss of evidence of which the father complains in this case does not unduly prejudice him.
 
 See Hankins,
 
 979 So.2d at 812.
 

 Our review of the record convinces us that the father did not present evidence from which one could conclude that he was prejudiced by the mother’s delay in seeking reimbursement of the medical expenses of the children. He admitted at trial that he did not dispute the fact that the mother took the children for medical care or the amount of the receipts submitted by the mother. Although, upon questioning by his attorney, he indicated that he had not reviewed the receipts submitted by the mother or made inquiries concerning the need for the treatment evidenced by those receipts, he did not object to those receipts on the basis that they were not evidence of the children’s medical expenses. Thus, we cannot conclude that the father has demonstrated that laches should bar the mother’s claims for reimbursement for the noncovered medical expenses of the children.
 
 See Hankins,
 
 979 So.2d at 812.
 

 In conclusion, we affirm that portion of the trial court’s judgment precluding the mother from recovering health-insurance premiums she paid between 1997 and 1999. Insofar as the judgment precluded the mother from recovering health-insurance premiums she paid between 1999 and 2005 and from recovering one-half of the non-covered medical expenses incurred by the children between 1992 and 2005, we reverse that judgment, and we remand the cause to the trial court for it to determine the amount the mother should recover.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . The father later counterclaimed, seeking a credit against any amount owed to the mother for the amount of child support he claimed that he had overpaid because he had not sought a modification of child support after the parties' older child reached the age of majority. The father agreed at trial that he would not pursue that claim
 
 if
 
 the mother were not awarded the medical-expense reimbursements she claimed.