On April 25, 1997, Trisha Ann Deas sued her husband, Dale Shelton Deas, for a divorce. Three children had been born of their marriage, and the wife had custody of her two children from an earlier marriage. The parties agreed to joint custody of their children with the wife having primary physical custody, and they proceeded to trial concerning the division of the marital estate.
On May 6, 1998, the trial court entered a judgment that, in pertinent part, divorced the parties, awarded custody of the children to the wife pursuant to the parties' agreement, ordered the father to pay monthly child support of $1,000 and the children's private school tuition,[1] awarded *Page 334 
the wife rehabilitative alimony in the amount of $500 per month for a period of 12 months, and awarded the wife a judgment of $2,750 for an attorney fee.
The divorce judgment also awarded the wife the marital residence at 2128 Marchfield (hereinafter the "Marchfield house") and ordered that the wife be responsible for the indebtedness on that residence. The wife was ordered to pay approximately $4,000 in credit card debt. The husband was awarded the marital residence at Brighton Place (hereinafter the "Brighton house"), and was ordered to pay the indebtedness on that residence. The parties were awarded the vehicles that they drove during the marriage, and the wife was also awarded an automobile driven by her daughter. The parties were ordered to be responsible for the debt on the vehicles that they were awarded. The husband was also awarded all of the life insurance policies, which had a cash value of approximately $90,000. After the trial court denied her post-judgment motion, the wife appealed to this court.
The record indicates that the parties met in January 1990 and married in February 1990. At the beginning of their marriage, the husband owned a computer software business and a lot in a residential subdivision. The wife has a GED certificate. Although the wife had been employed at a job paying minimum wage before the parties' marriage, she did not work outside the home thereafter; she took care of the children and the household. Her first pregnancy resulted in twins. A third child was born approximately one year after the twins were born.
The parties lived in an apartment until the wife became pregnant. The parties then purchased the Marchfield house for $184,500. The husband sold a nearby lot in the same subdivision in order to secure part of the payment for the Marchfield house. The parties paid off the mortgage on the Marchfield house within three years. At the time of trial, the husband testified that the value of the Marchfield house was $184,500; the wife valued the house at $175,000.
The parties first began discussing divorce in the spring of 1996. The parties did not separate at that time because the husband was operating his business from the Marchfield home and could not immediately move out of the home. The husband purchased the Brighton house, which is near the Marchfield house, for $275,000. The husband admitted at trial that he had purchased the Brighton house without the wife's knowledge during the time they were contemplating divorce. The parties reconciled, and the husband showed the Brighton house to the wife and children. The family moved into the Brighton house in the summer of 1996 and lived there until the parties separated.
In order to purchase the Brighton house, the husband financed $140,000 through his business, borrowed $90,000 on a signature loan, and borrowed $40,000 from his parents. The title to the Brighton house is in the name of the husband's father. However, the husband signed a note obligating him to repay his father's entire investment in the property. Throughout the trial, the husband vacillated regarding whether he or his father owns the Brighton house. At times, the husband insisted that the house belonged to his father. We note that the parties generally used the house for their common benefit during the marriage and no other entity expressed any ownership interest in the house at the trial; we conclude that the trial judge correctly noted during the trial that the Brighton house was clearly a marital asset.
The parties mortgaged the Marchfield home in order to repay the $90,000 signature loan the husband obtained to purchase the Brighton house. The record does not disclose what portion, if any, of the $140,000 obtained from the husband's business and used to purchase the Brighton home is still owed. The exhibits submitted by the husband that detail the assets *Page 335 
and liabilities of the parties do not show that loan as a liability. The husband did list in his exhibits a loan from the business with a balance of approximately $68,000.
The husband drives a 1988 Chevrolet van that he purchased through his business. The wife drives a 1996 Chevrolet Suburban; the payments for that vehicle are $600 per month. The wife also makes payments on a 1987 BMW automobile driven by her daughter from her first marriage. The parties own several life insurance policies. The cash surrender value of those policies is approximately $90,000. At the time of trial, the parties had over $20,000 in credit card and other household debt.
The husband earned approximately $95,000 per year from his business. He testified that his income had decreased and that he had earned only $59,000 in 1997. The husband had not filed income tax returns for his business for the past five years and was three years behind in filing his personal income tax returns. The husband testified that he had spent much of 1997, the year in which he claimed a much lower income than previous years, working on documents for his past-due income tax returns. He testified that spending time "catching up" on his tax returns resulted in his losing much time from work in 1997 and that his business was "off" as a result. The husband owes over $76,000 in back taxes, interest, and penalties.
The wife testified that the husband often was not current in billing his clients. She testified that in 1997, the husband fell behind in invoicing his clients and that, as a result, the family had very little income. The wife testified that she used the child support she receives for her two children from her previous marriage to pay for household expenses. For that reason, an arrearage accrued in the private school tuition for her children from her first marriage. Her previous husband is currently repaying that arrearage in tuition for his two children. In return for his repayment of that debt, the wife receives $500 per month less in child support until that arrearage is repaid. The wife testified that the tuition arrearage would be repaid one year after the trial.
Both the husband and the wife testified that before they separated in May 1997, they had fought about finances, the ownership of the Brighton house, and the husband's purchase of that house, among other things. Neither party made any attempt to shield their children from these arguments. The children have witnessed the parties calling each other names and have witnessed an incident in which the husband pushed the wife down and choked her. Although the couple initially attended marriage counseling before their last separation, the husband stopped attending the counseling sessions.
The husband testified that the parties' marital problems were the result of the wife's temper and her poor financial management. The wife testified that the husband was verbally and physically abusive; she stated that he stood on her feet to prevent her from leaving when they were arguing.
On appeal, the wife argues (1) that the trial court erred in its division of property and award of alimony, (2) that the trial court erred in allowing the father a credit against his child support obligation for private school tuition, and (3) that the trial court erred in its award of what she says is an "insufficient" attorney fee.
 I. Property Division and Alimony Award
A trial court's determination as to alimony and the division of property following a presentation of the evidence ore tenus is presumed correct. Parrish v. Parrish, 617 So.2d 1036
(Ala.Civ.App. 1993). On appeal, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed, absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id. *Page 336 
Some factors that the trial court should consider in dividing marital property and in setting alimony payments include "(1) the earning ability of the parties; (2) their probable future prospects; (3) their age, . . . health and station in life; (4) the duration of the marriage; and (5) the conduct of the parties with reference to the cause of divorce." Echols v. Echols, 459 So.2d 910,911-12 (Ala.Civ.App. 1984). The division of property in a divorce proceeding need not be equal, but it must be equitable. Isham v. Isham,464 So.2d 109 (Ala.Civ.App. 1985).
Under the facts of this case, we conclude that the trial court abused its discretion in fashioning its property division and alimony award. The parties were married for eight years and have three small children. The wife did not work outside the home during the parties' marriage. At the time of trial, the wife was employed part-time earning $6.00 per hour. In addition, the wife cleans 2 to 3 houses per week for $40 each. The wife has a GED but very little job experience. She testified that she could obtain a job earning minimum wage. The husband has two college degrees and owns his own business, from which he earns approximately $95,000 per year.
The trial judge awarded the wife $500 per month as rehabilitative alimony for one year and $1,000 per month in child support for the parties' three children. The wife is presently receiving $500 per month less in child support from her first husband in exchange for his repayment of the tuition arrearage for their children that accrued when the wife used her child support for those children to pay for marital expenses such as groceries. The trial court awarded the wife the Marchfield house, subject to a $100,000 mortgage on the house that was debt-free before the husband, without the wife's knowledge, purchased the Brighton house for $275,000. The wife is also responsible for the $4,000 credit card debt, the $600 monthly payment on the loan used to purchase her vehicle, and for household expenses that she testified total approximately $2,900 per month.
The husband was awarded his business, from which he derives an income of approximately $95,000 per year. The husband was awarded the Brighton house. The husband was ordered to pay over $20,000 of the parties' credit card, furniture, and equity line bills. Although the divorce judgment makes the husband responsible for a great deal more debt than the wife, we note that approximately $68,000 of the husband's debt liability is a loan from the husband's business and another $76,000 of his debt liability is his total tax liability arising from his failure to timely pay his federal income taxes.
Although the record supports the conclusion that both parties' conduct contributed to the breakdown of the marriage, the record also shows that a great deal of the debt incurred during the marriage was the result of the husband's conduct in failing to pay taxes for four years and in purchasing a $275,000 house without his wife's knowledge or consent. We conclude that the division of the marital estate in the face of such an accumulation of debt by the husband is neither equal nor equitable. Isham v. Isham, supra. See also Grice v. Grice, 673 So.2d 772 (Ala.Civ.App. 1995) (reversing the trial court's award of alimony because of the wife's likely inability to support herself by her own employment).
Accordingly, we reverse the divorce judgment as to the property division and alimony award and remand the case to the trial court for further consideration.
 II. Child Support — Credit for Tuition
The wife also argues that the trial court erred in allowing the husband to pay the children's private school tuition in lieu of setting an amount of child support.
 "(4) Additional Awards for Child Support. In addition to the recommended child support order, the court may make additional awards for extraordinary medical, dental, and *Page 337 
educational expenses if (i) the parties have in writing agreed to such awards or (ii) the court, upon reviewing the evidence, determines that such awards are in the best interest of the children and states its reasons for making such additional awards."
Rule 32(C)(4), Ala. R. Jud. Admin (emphasis added).
The child support guidelines are designed to provide for the basic support needs of a child. In determining what items may be credited against a noncustodial parent's child support obligation, this court has disallowed credits for "extras" such as cars, gifts, and private school tuition. State ex rel. Burt v. Morgan, 716 So.2d 729 (Ala.Civ.App. 1998); Hillis v. Boggs,646 So.2d 124 (Ala.Civ.App. 1994); Rotar v. Weiland, 591 So.2d 893
(Ala.Civ.App. 1991); Anonymous v. Anonymous, 428 So.2d 109 (Ala.Civ.App. 1983).
In Rotar, supra, this court affirmed a trial court's refusal to grant a credit against a noncustodial parent's child support obligation for private school tuition payments made by the noncustodial parent. In so holding, this court noted that in making those payments, the father had avoided payments meant for the basic support needs of the children. Rotar, supra.
In this case, the trial court included private school tuition as part of the husband's legal support obligation. However, we cannot hold that private school tuition is "essential to basic child support." See Hillis v. Boggs, 646 So.2d at 126. On remand, the trial court is instructed to calculate the basic child support obligation pursuant to the Rule 32 guidelines. The trial court may, in its discretion, award additional amounts for private school tuition pursuant to Rule 32(C)(4), Ala.R.Jud.Admin.
 III. Attorney Fee
The wife also argues that the trial court erred in awarding her, what she says, is an insufficient attorney fee. The trial court awarded the wife an attorney fee of $2,750. The wife testified that her attorney fee was approximately $16,000. In awarding attorney fees, the trial court specifically stated that the amount included any amounts for discovery sanctions requested by the wife. Generally, the award of an attorney fee is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Bertram v. Doss, 709 So.2d 1274
(Ala.Civ.App. 1998); Brasfield v. Brasfield, 679 So.2d 1091
(Ala.Civ.App. 1996). In determining whether to award an attorney fee, the trial court considers equities similar to those which govern the division of property — the earning capacity of the parties, their financial circumstances, and the results of the litigation. Isham v. Isham, 464 So.2d 109 (Ala.Civ.App. 1985). The trial judge may also consider, "where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney." Brewer v. Brewer, 695 So.2d 1, 3
(Ala.Civ.App. 1996) (citing Figures v. Figures, 624 So.2d 188,191 (Ala.Civ.App. 1993)).
The record in this case reveals that the wife was required to seek and obtain a restraining order to maintain her residence with the children in the marital home as directed by the court in its initial orders in this case. Thereafter, the wife was compelled to file motions for contempt concerning the husband's violation of the restraining order and other pretrial orders. The record also shows that the wife was required to file numerous other motions seeking support pendente lite to maintain her children and the household during the litigation. In short, this case was extensively litigated, and a reasonable view of the extent of that litigation supports the conclusion that the wife's attorney would have expended a considerable amount of time in her representation. See, e.g., Brasfield v. Brasfield, 679 So.2d 1091, 1095 (Ala.Civ.App. 1996) (where "protracted and contentious" litigation was a *Page 338 
factor in an award of a $100,000 attorney fee).
The record also contains the wife's undisputed testimony that her attorney's fees were in excess of $16,000 and a detailed bill by the wife's attorney shows fees and expenses still owed of nearly $18,000. Under the circumstances of this case, we conclude that the trial court's award of $2,750 (inclusive of discovery sanctions against the husband) was an abuse of discretion. Accordingly, the amount of the attorney fee awarded to the wife is reversed and the cause is remanded to the trial court for a redetermination of that award.
The wife is awarded an attorney fee on appeal in the amount of $1,500.
REVERSED AND REMANDED.
Yates, J., concurs.
Monroe, J., concurs specially.
Crawley and Thompson, JJ., concur in part and dissent in part.
[1] The combined private school tuition for all three children totals approximately $12,000 per year. The divorce judgment notes that although the amount of child support required of the husband exceeds the child support guidelines of Rule 32, Ala.R.Jud.Admin., the court finds the amount "fair and equitable under the totality of the financial circumstances of the parties."