BRYAN, Judge.
Susan Lynn Caswell (“the mother”) appeals from a judgment entered by the Lee Circuit Court (“the trial court”) that awarded Barry Scott Caswell (“the father”) credit toward his child-support ar-rearage. We reverse and remand.

Facts and Procedural History

The record indicates that the mother and the father were divorced by the trial court on December 19, 2001. The divorce judgment awarded the mother and the father joint physical and joint legal custody of their three children: a daughter, Kathryn, and two sons, Ryan and Clay (referred to collectively as “the children”). Pursuant to that judgment, neither party was required to pay child support. However, the judgment required the parties to *771 share equally in expenditures related to the extracurricular activities of the children and to the college or vocational education of the children. On May 22, 2003, the trial court entered a judgment that modified the divorce judgment and incorporated an agreement of the parties. Pursuant to the modification judgment, the mother was awarded sole legal and physical custody of the children and the father agreed to pay child support in the amount of $617 each month.
On October 5, 2010, the mother filed a petition seeking to hold the father in contempt for, among other things, his alleged failure to pay child support since December 2005. On November 2, 2010, the father filed an answer, pro se, denying the allegations contained in the mother’s petition. With the assistance of counsel, the father amended his answer on February 18, 2011, to include the affirmative defenses of accord and satisfaction, offset, laches, and unclean hands. The father also filed a counterclaim seeking to hold the mother in contempt for her alleged failure to pay one-half of the college expenses of the parties’ two oldest children, Kathryn and Ryan, as ordered in the parties’ divorce judgment. On May 10, 2011, the mother answered the father’s counterclaim, denying its contentions.
On May 12, 2011, the trial court conducted an ore tenus hearing. The parties stipulated that no child-support payments had been made by the father since December 2005 and that the total arrearage owed by the father was approximately $40,100. The mother testified that the father unilaterally terminated his child-support payments after December 2005 and that she had not agreed to allow the father to stop making child-support payments. However, according to the father, he and the mother had mutually agreed in December 2005 that he would pay for expenditures on behalf of the children as they arose in lieu of making monthly child-support payments. The mother testified that, since December 2005, it was common for the children to spend two or three nights each week with the father. The father testified that it was common for Clay to spend more time at the father’s house than at the mother’s.
The parties also stipulated that, although no child-support payments had been made since December 2005, the father had provided financially for other activities in which the children were involved. The father submitted an exhibit into evidence that itemized the expenditures he had made on behalf of the children during the time that he was not paying child support to the mother. The expenditures were supported by bank statements and transaction receipts. Included on the list were expenditures for, among other things, school, clothing, fishing equipment, truck parts, guns, cellular-telephone bills, dirt-bike parts, and skateboard parts. It should be noted that, generally speaking, mortgage, utility, and grocery expenditures for the time the children spent at the father’s house were not included in the list.
The father argued that he should receive credit against his child-support arrearage for the expenditures that he made on behalf of the children as listed in the exhibit he provided to the trial court. The mother argued that, because several of the expenditures included on the list were not essential to the support and maintenance of the children, they should not be credited against the father’s child-support arrear-age. The mother argued that the father should receive credit totaling, at most, $5,567.76 against the arrearage, because that number, in her opinion, represented the listed expenditures actually related to essential child support and maintenance.
*772 On July 6, 2011, the trial court entered an order that, among other things, ordered the mother to pay the father $8,000 as reimbursement for Kathryn’s and Ryan’s college expenditures. Regarding the father’s request for credit against his child-support arrearage, the trial court attached to its order the list of expenditures that had been submitted by the father during the ore tenus hearing. The trial court struck certain expenditures from the list provided by the father, either because those expenditures had been incurred on behalf of a child who had obtained the age of majority or because the expenditure had been accounted for elsewhere on the list. Additionally, the trial court awarded the father credit against his child-support ar-rearage for automobile insurance he had paid on behalf of Ryan and Clay, and he was also awarded credit against his arrear-age for the purchase of an automobile for Clay. The total amount of credit awarded against the father’s child-support arrear-age was $27,449.80. The trial court reserved ruling on the amount of interest owed to the mother, and it ordered the parties to submit a proposed order to the trial court regarding the amount of interest that had accumulated on the father’s arrearage.
In compliance with the trial court’s order, the parties subsequently filed a joint notice to the trial court stating that the father’s outstanding child-support arrear-age, including interest, totaled $15,902.80 after applying, among other things, the child-support credits awarded in the July 6, 2011, order. The joint notice indicated that the parties had agreed to subtract $405.19 from the total credit awarded in the July 6, 2011, order. Thus, the father was ultimately awarded credit totaling $27,044.61 against his child-support arrear-age. On July 29, 2011, the trial court entered a final judgment holding that the father’s child-support arrearage and interest totaled $15,902.30.
On August 5, 2011, the mother moved to alter, amend, or vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P., arguing, among other things, that the trial court had erred by awarding the father credit toward his child-support arrearage for items that were not essential to the support and maintenance of the children. On August 18, 2011, the trial court denied the relief requested by the mother in her postjudgment motion.[1]
On September 27, 2011, the mother filed a timely notice of appeal to this court. On appeal, the mother contends that the trial court erred by awarding the father a total credit in the amount of $27,044.61 because: (1) the trial court improperly considered certain matters in determining the amount of the credit and (2) the trial court improperly allowed credit against the father’s child-support obligation for expenditures that were not essential to the support and maintenance of the children.

Standard of Review

“Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.”
Dixon v. Windsor, 596 So.2d 898, 899 (Ala.1992). However, this court reviews the trial court’s legal conclusions de novo. Henderson v. Henderson, 978 So.2d 36, 39 (Ala.Civ.App.2007).

*773
Analysis

In its judgment, the trial court stated that “some of the things playing into the Court’s decision” included the “laissez faire” living arrangement of the children, testimony concerning the alleged oral agreement between the mother and the father, the mother’s delay in seeking to enforce the father’s child-support obligation, and Kathryn’s and Ryan’s reaching the age of majority after the father stopped paying child support in December 2005. The mother argues that the trial court abused its discretion by considering those matters when making a determination that the father should be awarded credit against his child-support arrearage.
This court has held that
“[ejhild support ... [is a] matterf ] that rest[s] within the sound discretion of the trial court and that the trial court’s judgment in regard to child support will not be reversed absent a showing of abuse of that discretion. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App.1985). Further, the award or denial of credits against an arrearage lies within the sound discretion of the trial court, and its decision regarding credits will not be reversed without a showing of plain and palpable abuse. Kinsey v. Kinsey, 425 So.2d 483 (Ala.Civ.App.1983).”
Hillis v. Boggs, 646 So.2d 124, 125 (Ala.Civ.App.1994). The trial court’s decision to award or deny a credit against a child-support arrearage must be made after considering all surrounding circumstances. See Lewis v. Winslow, 587 So.2d 1006, 1008 (Ala.Civ.App.1991).
The mother first takes issue with the trial court’s consideration of the “lais-sez faire” living arrangement of the children when determining the amount of credit to be awarded against the father’s child-support arrearage. The record indicates that the trial court awarded the father credit for specific expenditures that he paid on behalf of the children. There is no indication in the judgment that the trial court awarded the father credit against his child-support obligation based on the children’s living arrangement. Compare Odom v. Smith, 16 So.3d 109, 112 (Ala.Civ.App.2009) (awarding full credit against the father’s arrearage for a period because the children lived primarily with the father during that period, the father provided all the children’s support during that period, and the mother provided no support during that period). Therefore, any consideration that the trial court gave to the “laissez faire” living arrangement of the children was general in nature and was not an abuse of the trial court’s discretion.
The mother also contends that the trial court improperly considered testimony concerning the alleged oral agreement between the parties that purportedly modified the father’s child-support obligation. See Dodd v. Dodd, 588 So.2d 476, 478 (Ala.Civ.App.1991) (“The parents of a minor child cannot nullify or modify a previous child support judgment by their mutual agreement without receiving approval of the trial court to do so.”). However, the trial court did not specifically find that an agreement existed. Furthermore, the terms of the alleged oral agreement would have permitted the father to finance the children’s general expenditures in lieu of paying child support. Had the trial court enforced those terms, the father would have been awarded credit for all the expenditures he made on behalf of the children, but the trial court’s judgment required the father to pay child-support arrearages. The record indicates that the trial court generally considered testimony concerning the alleged *774 oral agreement when making the credit determination, not that its judgment was intended to enforce the terms of the alleged agreement. Thus, we conclude that the trial court’s general consideration of such testimony does not amount to an abuse of discretion.
Regarding the trial court’s consideration of the mother’s delay in seeking to enforce the father’s child-support obligation, we note that the mother appears to construe the trial court’s consideration of her delay in attempting to enforce the father’s child-support obligation as an improper application of the defense of laches. See Williams v. Hobson, 5 So.3d 630, 632 (Ala.Civ.App.2008) (quoting Mills v. Dailey, 38 So.3d 731, 735 (Ala.Civ.App.2008)) (“ ‘Alabama law has long held that the defense of laches is inapplicable to actions enforcing child-support obligations.’ ”). However, the defense of laches, if it had been applied, would have operated as a complete bar to recovery. See Mills, 38 So.3d at 735 (quoting Ex parte Grubbs, 542 So.2d 927, 928 (Ala.1989), defining laches and explaining that laches “ ‘operates as a bar’ ” to recovery on a claim). The trial court’s judgment ordered the father to pay a child-support arrearage. Therefore, the record indicates that the trial court did not apply the defense of laches to the mother’s request for an award of a child-support arrearage.
The last matter with which the mother takes issue is the trial court’s consideration of the fact that the parties’ two oldest children obtained the age of majority after the father stopped paying child support in December 2005. However, the trial court’s judgment clearly indicates that its consideration of that fact benefited the mother because the trial court did not award the father credit for some expenses he incurred on behalf of the two oldest children after they obtained the age of majority.
Accordingly, we cannot conclude that the trial court committed reversible error by considering the living arrangement of the children, testimony concerning the alleged oral agreement between the parties, the mother’s delay in seeking to enforce the father’s child-support obligation, and Kathryn’s and Ryan’s reaching the age of majority when making the determination to award the father credit against his child-support arrearage.
Next, the mother argues that the trial court improperly awarded credit against the father’s child-support arrear-age for expenditures related to the children’s extracurricular activities. We agree. To the extent that the parties are required to equally share in expenditures related to the extracurricular activities of the “minor children,” that obligation is separate and distinct from the father’s obligation to pay child support pursuant to the child-support guidelines in Rule 32, Ala. R. Jud. Admin. See Deas v. Deas, 747 So.2d, 332, 337 (Ala.Civ.App.1999) (“The child support guidelines are designed to provide for the basic support needs of a child.”). See also Stringer v. Sheffield, 451 So.2d 320, 323 (Ala.Civ.App.1984) (affirming the trial court’s refusal to award the father credit against his child-support ar-rearage for the purchase of sports equipment for the child). Therefore, we reverse the trial court’s judgment to the extent that it awarded the father credit against his child-support arrearage for expenditures he incurred related to the extracurricular activities of the children.[2]
*775 The mother also argues that the trial court improperly awarded credit against the father’s arrearage for several expenditures made on Ryan’s behalf after he obtained the age of majority. The modification judgment ordered the father to pay “child support for the support and maintenance of the minor children of the parties,” and it did not obligate the father to pay for the children’s postminority expenditures.[3] Therefore, the trial court’s award of credit against the father’s child-support arrearage for expenditures made on Ryan’s behalf after he obtained the age of majority is reversed. See Weaver v. Weaver, 401 So.2d 77, 78 (Ala.Civ.App.1981) (“[Tjhere is no authority for the court to credit the father with any support furnished [to the child] after [the child] reached majority.”).
Finally, the mother argues that the trial court improperly awarded credit against the father’s arrearage for expenditures that were not essential to the support and maintenance of the children. Specifically, she argues that the trial court erred by including expenditures for vehicle purchases, vehicle accessories, vehicle-registration fees, vehicle servicing, vehicle parts, automobile insurance, guns, a tree stand, skateboard parts, and monthly cellular-telephone payments in the determination of the amount of credit to which the father was entitled.
This court has held that
“the trial court has discretion to award credits against an arrearage. McDaniel v. Winter, 412 So.2d 282 (Ala.Civ.App.1982). However, although the father may be credited for expenses that he assumes gratuitously, these expenses must clearly be categorized as essential to basic child support. Evans v. Evans, 500 So.2d 1095 (Ala.Civ.App.1986).”
Hillis, 646 So.2d at 125-26 (emphasis added). We have also held that
“[t]he child support guidelines are designed to provide for the basic support needs of a child. In determining what items may be credited against a noncustodial parent’s child support obligation, this court has disallowed credits for ‘extras’ such as cars, gifts, and private school tuition. State ex rel. Burt v. Morgan, 716 So.2d 729 (Ala.Civ.App.1998); Hillis v. Boggs, 646 So.2d 124 (Ala.Civ.App.1994); Rotar v. Weiland, 591 So.2d 893 (Ala.Civ.App.1991); Anonymous v. Anonymous, 428 So.2d 109 (Ala.Civ.App.1983).”
Deas v. Deas, 747 So.2d at 337.
We agree that expenditures such as vehicle purchases, vehicle accessories, vehicle-registration fees, vehicle servicing, vehicle parts, automobile insurance, guns, a tree stand, skateboard parts, and monthly cellular-telephone payments cannot “clearly be categorized as essential to basic child support,” Hillis, 646 So.2d at 126. Accordingly, we conclude that the trial court exceeded its discretion by awarding the father credit against his child-support ar-rearage for those expenditures.
At first blush, the effect of this decision may appear harsh, but we cannot ignore the underlying policy considerations that support it. A noncustodial parent may not receive credit against his or her child- *776 support obligation by providing the child with gifts, luxuries, or other nonessential “extras” that do not directly go to the basic support of the child. To hold otherwise may allow the noncustodial parent to win favor in the eyes of the child by providing nonessential “extras,” all while the custodial parent is potentially struggling to provide the child’s basic necessities, such as, food, clothing, and shelter, in the absence of court-ordered child-support payments.
Accordingly, the trial court’s judgment is reversed and this case is remanded with instructions to the trial court to recalculate the credit to be awarded against the father’s child-support arrearage in a manner consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. The trial court, at the request of the mother, amended part of its final judgment regarding the father's ongoing child-support obligation. The amendment did not affect the credit awarded against the father's arrearage and is not an issue on appeal.

. We do not hold that the father is not entitled to reimbursement for 50% of the expenditures related to the extracurricular activities of the children, only that such expenditures may not be credited against his child-support arrear- *775 age, because the obligations are separate and distinct.

. The divorce judgment did require the parties to share equally in the children's college expenses. That obligation, however, is separate from the father’s child-support obligation pursuant to Rule 32 arising from the May 2003 judgment modifying the divorce judgment. On appeal, the mother does not challenge the portion of the trial court’s judgment ordering her to reimburse the father for Kathryn’s and Ryan's college expenses.