BRYAN, Judge.
James Kevin Taylor (“the father”) appeals from a judgment of the Lauderdale Circuit Court (“the trial court”) that divorced him from Michelle Taylor (“the mother”) insofar as it awarded him separate visitation schedules for the parties’ two children and ordered him to pay one-half of the expenses related to the children’s extracurricular activities and one-half the cost of private-school tuition for the older child.

Procedural History

The mother filed a complaint for a divorce on December 18, 2009, alleging incompatibility of temperament and adultery as grounds for the divorce. The mother requested, among other things, custody of the parties’ two children — a boy born in June 1999 (“the son”) and a girl born in July 2009 (“the daughter”). On December 80, 2009, the trial court entered a preliminary order that required the mother and the father to “coordinate the payment of fixed monthly expenses” and that stated that “[t]he Court intends that both parties contribute to the payment of monthly expenses in the amounts and in the manner they did when they were cohabitating as husband and wife.” The father subsequently filed an answer to the mother’s complaint.
The record indicates that the trial court conducted an ore tenus proceeding over six days from October 2010 through August 2011. On November 15, 2011, the trial court entered a judgment divorcing the parties on the ground of incompatibility of temperament. The parties were awarded joint legal custody of the children, and the mother was awarded primary physical custody of the children. The father was awarded visitation with the son based on a 14-day rotating schedule wherein the father was awarded 6 days and 6 nights of visitation with the son. The mother’s custodial period with the son was the remaining 8 days and 8 nights of every 14-day period. The father was awarded visitation with the daughter as set forth in the “Standard Visitation Guidelines adopted by the Circuit Court of Lauderdale County.”[1] Based on that schedule, in the same 14-day period, the father was awarded 2 days and 2 nights of visitation with the daughter, as well as one 4-hour midweek visit every other week.[2] The divorce judgment and the standard visitation schedule specifically defined additional visitation times for the father on holidays and during the summer.
The trial court ordered the father to pay the mother $1,049 a month in child support for the children. Additionally, the mother and the father were ordered to “equally split any and all expenses for extracurricular activities of the minor children.... ” The trial court found that the mother had spent $1,027.95 for a band instrument for the son, and it ordered the father to reim *990 burse the mother $514 for the instrument. The trial court also ordered the mother and the father to “equally split the tuition for the [son] at Shoals Christian School as long as the [son] remains enrolled there.” The trial court further found that, “pursuant to its preliminary order that the parties contribute to the payment of monthly expenses in the amount and in the manner they did when living as husband and wife, ... the [father] is ordered to reimburse the [mother] tuition expenses in the sum of $3,400....”
On December 9, 2011, the father filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. The father requested, among other things not pertinent to this appeal, that the trial court amend the divorce judgment to award him additional visitation with the daughter so that his visitation with the daughter would be conducted at the same time that he had visitation with the son. The father argued that he wanted to maximize his opportunities to have custody of the son and the daughter at the same time and to limit the amount of time and expense incurred to transport the children. The father also requested that the requirement that he pay one-half of extracurricular-activity expenses and private-school tuition be vacated in light of the fact that he was paying the recommended amount of child support pursuant to Rule 32, Ala. R. Jud. Admin. The father argued that those awards were not supported by the evidence and that the trial court had no authority to make those awards in addition to requiring him to pay the full amount of child support recommend by the child-support guidelines. The trial court denied the father’s motion on December 21, 2011, and the father filed a timely notice of appeal.

Issues

On appeal, the father raises two issues for this court’s review: (1) whether his visitation time with the children should have been scheduled so that he exercised visitation with the daughter during times that he had visitation with the son and (2) whether the trial court erred by ordering him to pay one-half of extracurricular-activity expenses and private-school tuition in addition to child support pursuant to the Rule 32 child-support guidelines.

Facts

The parties were married in June 1993, and they separated in August 2009. During the marriage, the parties lived in Florence, but, after the parties separated, the father moved in with his parents in Cherokee. It was undisputed that the father had three extramarital affairs during the parties marriage, but the mother testified that the father had admitted to having four extramarital affairs. The mother forgave the father for the first three affairs, although the father admitted to only two affairs at that time, and the parties lived together for several years after the mother learned of the affairs. The father began his last affair in February 2009 when the mother was pregnant with the daughter. It was undisputed that the mother found out about the affair only a few weeks before the daughter was born. The father alleged that he had ended the affair before the daughter was born and that he had not resumed the affair after the daughter was born despite the fact that the parties separated within a few weeks after the daughter’s birth. The woman that the father had had an affair with testified that the affair began in February 2009 and lasted approximately one year. She later testified that the father had ended the affair before the daughter was born in July 2009. The father’s mother testified that she was under the impression that the father was still seeing the woman he had had an affair with after he separated from the mother because the father occasionally went to the *991 woman’s house and because the father had taken her to visit the woman around Christmas. Suffice it to say, the trial court could have disbelieved the father’s testimony that he had not resumed his relationship with the woman he had had an affair with after the daughter’s birth in July 2009.
After the parties separated in August 2009, the parties agreed to a visitation schedule that allowed the father to have custody of the children approximately 50% of the time. It was undisputed that the son enjoyed the visitation schedule that the parties utilized during the pendency of the proceedings below and that the son had continued to excel in school and in sports despite the fact that it took the father 35 to 45 minutes to get to the child’s school in Florence from his parents’ home in Cherokee. The mother agreed to continue the visitation schedule as it existed with the son, except that she requested that the son be returned to her on Sunday evenings by 5:30 so that he could attend church with her.
The record indicates that the father initially had the same visitation with the daughter as he had with the son, except that he did not keep the daughter overnight. When the daughter was one year old, the mother refused to continue that arrangement after the father returned the daughter to her custody after 10:00 p.m. on two nights in a row. Thereafter, the father exercised visitation with the daughter on one day each weekend with no overnight visit; that arrangement followed “standard” visitation guidelines for a child under the age of three in Lauderdale County. As of the date of the last hearing in August 2011, when the daughter was just over two years old, the father had kept the daughter overnight on only one occasion when the mother was sick. During the ore tenus hearing, the father requested the same custodial time with the daughter that he had with the son. The mother testified that she did not know if the father was capable of caring for the daughter overnight and that, on one occasion, he had returned the daughter to her custody with the daughter’s diaper on sideways. Numerous witnesses appeared on behalf of the father to attest to his parenting skills and his ability to care for the daughter. The father admitted that the mother was a good mother and that she had encouraged his relationship with the children.
The record indicates that the father is employed as the director of respiratory care, the sleep disorder center, the c-pap care center, and the neuro-EE G lab at Cullman Regional Medical Center. The record indicated that the father earned approximately $5,868 a month in gross pay and that his net income each month was approximately $4,100 after deductions were made for state and federal taxes, health and dental insurance, life insurance, retirement, and donations to a benevolent fund, among other things. In February 2011, the father testified that his monthly expenses totaled $4,040 a month, which included, among other things: $1,100 a month in child support; $150 a month for his and the son’s cellular telephone; $120 a month for marital credit-card debt; $700 a month for gasoline; $110 a month for automobile and boat insurance; $200 a month to his mother for his vehicle, when he could; $900 a month for food for himself, his mother, and the son; $75 a month for lunches and snacks for the son; $100 a month for dental work; $100 a month for credit-card debt incurred after the parties separated; and $75 a month for gifts for the children. The father included sums that he paid his mother for utility bills and lawn maintenance, but he admitted that, like the payment to his mother for his vehicle, he did not always pay his mother *992 those sums. He stated that his mother does not ask him for money and that there was no threat of her making him move out of her home.
At the time of the hearing in August 2011, the father’s mother testified that she and the father had a new arrangement pursuant to which the father paid her $800 a month and that, from that money, $300 went to repay her for the purchase of his vehicle and its repairs and that the remaining $500 went to the father’s living expenses, such as utility bills and groceries. She stated that the father had initially paid her whatever he could but that the new arrangement was $800 every month and she paid all the bills. She stated that the father still bought some groceries for the household and that he had made a onetime payment of $700 to purchase a year’s worth of natural gas for her home. However, it was unclear whether the father paid for the natural gas before he began the new financial arrangement with his mother.
The mother worked at a doctor’s office earning approximately $42,000 a year, and the record indicates that her net income equaled approximately $2,750 a month. According to the mother, her expenses totaled approximately $4,100 a month, which included $315 a month for child care for the daughter, which was included in the calculation of child support, as well as $455 a month for the son’s private-school tuition. The mother stated that she had been paying all the household bills since the parties separated and that she had occasionally been more than one month late paying the mortgage on the marital residence, which she was made responsible for in the divorce judgment.
The record indicates that the son had attended the same private school from kindergarten through his sixth-grade year. When the parties first separated, the cost of attendance was approximately $433 a month for 11 months out of the year. At the time of the final hearing, the cost of attendance had increased to $455 a month for 11 months. It was undisputed that the mother had paid the tuition cost for the son’s attendance since the parties’ separation. The father testified that he wanted the son to continue to attend the same private school, but he claimed that he could not afford to contribute to his tuition. The mother stated that she planned to send the son to the same private school whether the father contributed toward the costs or not. She testified that the son loved his school, that his classmates were like his family, and that he was very involved in extracurricular activities at the school.
It was undisputed that the son was an exceptional athlete, that he had played numerous sports throughout his childhood, and that he had participated in other extracurricular activities such as Cub Scouts and band. The mother submitted documentation indicating that she had purchased a trombone for the child and that the balance of the cost of purchasing that instrument after her down payment was $1,027.95. The mother also presented evidence indicating that, in the year 2010, she had paid extracurricular expenses for the son in the amount of $434 for things like registration fees for sports teams, sporting equipment, cub-scout camp, and sports camp. The father repeatedly testified about his involvement in the son’s extracurricular activities and the son’s athletic abilities, yet he claimed that he could not afford to assist the mother in financing the cost of the son’s extracurricular activities.

Standard of Review

“When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on *993 these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[u]nder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’ Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978).”
City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002).

Discussion

On appeal, the father first argues that the trial court erred by fashioning his visitation award with the children in such a manner that his visitation with the daughter does not coincide with his visitation with the son. He contends that the trial court exceeded its discretion in setting the visitation schedules for the children because there is no coordination between his visitation with the daughter and his visitation with the son and that such a lack of coordination is not in the best interests of the children because it keeps the son and the daughter separated for long periods. He also argues that the trial court erroneously limited his visitation with the daughter despite the fact that there was no evidence indicating that he was unable to care for the daughter in the same manner that he was able to care for the son.
“The trial court is in the best position to determine the credibility of the witnesses, to assign weight to their testimony, and to assess what is in the best interest of the child. ‘The determination of proper visitation ... is within the sound discretion of the trial court, and that court’s determination should not be reversed by an appellate court absent a showing of an abuse of discretion.’ Ex parte Bland, 796 So.2d [340,] 343 [ (Ala.2000) ]. ‘The primary consideration in setting visitation rights is the best interest of the child. Each child visitation case must be decided on its own facts and circumstances.’ DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998) (citation omitted).”
Williams v. Williams, 905 So.2d 820, 830 (Ala.Civ.App.2004).
Our review of the terms of the final judgment indicates that the father has weekend visitation with the daughter every time that he has a weekend visitation with the son. The only difference in the visitation schedules for the son and the daughter is that the father has an additional 4 days and 4 nights with the son in each 14-day period; during the first 7-day period, the father has visitation with the son on Monday morning through Wednesday morning, and, during the second 7-day period, the father has visitation with the son on Wednesday evening through Friday evening. During the first seven-day period, the father has visitation with the daughter each Tuesday evening for four hours while he has visitation with the son. Although we agree with the father that there is no evidence indicating that he is *994 incapable of caring for the daughter during the periods that he has custody of the son, we note that the trial court’s decision was required to be based upon the best interest of the daughter. Williams, supra. The trial court could have considered the daughter’s age and concluded that the extended visitation schedule that served the best interests of the 12-year-old son would not serve the best interests of the 2-year-old daughter.[3]
Furthermore, we are not convinced by the father’s argument that this situation is akin to an award of “split custody” — where one parent is awarded custody of one child and the other parent is awarded custody of the other child. Each week, the children will be apart for only two days and two nights; however, even during those times apart, the children "will see each other every other week for one four-hour time period in the evening. For this court to do anything other than affirm the regular visitation schedule set forth by the trial court would be to substitute our judgment for that of the trial court, which we are not permitted to do. See Stone v. Stone, 26 So.3d 1232, 1235-86 (Ala.Civ.App.2009) (“This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court.”); and K.D.H. v. T.L.H., 3 So.3d 894, 899 (Ala.Civ.App.2008) (quoting Alonzo v. Alonzo, 628 So.2d 749, 750 (Ala.Civ.App.1993)) (‘“Our standard of review is not what we might have done had we been the trial judge, but whether we find from the evidence that the trial judge was so in error as to constitute an abuse of his discretion.’ ”).
However, regarding the father’s holiday visitation with the daughter and the son, we must conclude that the trial court exceeded its discretion by failing to craft a visitation schedule that allowed the father to have simultaneous visitation with the daughter and the son during the holidays. For example, on Easter Sunday, in odd years only, the father has visitation with the daughter from 8:00 a.m. until 6:00 p.m., but, whether it is an even year or an odd year, the father has visitation with the son from 3:00 p.m. to 8:00 p.m. Similar examples of uncoordinated visitation times could be given during other holidays such as Labor Day, Memorial Day, and Thanksgiving. Because there is no evidence in the record that would support a conclusion that the best interests of the children would be served by the uncoordinated holiday visitation schedules, we reverse the trial court’s judgment insofar as it awarded the father holiday visitation with the children, and we remand the cause with instructions to the trial court to craft a visitation schedule that allows the children to be together with the father during his periods of holiday visitation.
Next, the father argues that the trial court erred by requiring him to pay one-half of the children’s extracurricular-activity expenses and one-half of the son’s private-school tuition in addition to paying the full amount of child support recommended by the child-support guidelines. See Caswell v. Caswell, 101 So.3d 769, 775 (Ala.Civ.App.2012) (citing Deas v. Deas, 747 So.2d 332, 337 (Ala.Civ.App.1999)) (holding that private-school tuition and extracurricular-activity expenses are not part of basic child support contemplated by the Rule 32 child-support guidelines). See also A.B. v. J.B., 40 So.3d 723, 733 (Ala.Civ.App.2009). It is well settled that “matters of child support are within the sound discretion of the trial court and *995 will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly or palpably wrong.” Spencer v. Spencer, 812 So.2d 1284, 1286 (Ala.Civ.App.2001).
In support of his argument, the father cites A.B. v. J.B., supra, wherein this court reversed a judgment that required the former wife, the noncustodial parent, to pay one-half of the costs of extracurricular activities for the child. 40 So.3d at 733. In that case, we held:
“Rule 32(A), Ala. R. Jud. Admin., provides that
“‘[t]here shall be a rebuttable presumption, in any judicial or administrative proceeding for the establishment or modification of child support, that the amount of the award that would result from the application of these guidelines is the correct amount of child support to be awarded. A written finding on the record indicating that the application of the guidelines would be unjust or inappropriate shall be sufficient to rebut the presumption if the finding is based upon:
“ ‘(i) A fair, written agreement between the parties establishing a different amount and stating the reasons therefor; or
“ ‘(ii) A determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable.’
“Thus, although the amount of child support established by the guidelines creates a presumption as to the correct amount of child support to be awarded, that presumption is rebuttable, and, under certain circumstances, a trial court has the discretion to award child support outside the guidelines.
“Additionally, Rule 32(C)(4), Ala. R. Jud. Admin., provides:
“ ‘In addition to the recommended child-support order, the court may make additional awards for extraordinary medical, dental, and educational expenses if (i) the parties have in writing agreed to these awards or (ii) the court, upon reviewing the evidence, determines that these awards are in the best interest of the children and states its reasons for making these additional awards.’
“In this case, however, no evidence was presented to rebut the presumption created by the guidelines, and the trial court’s final judgment failed to indicate that application of the guidelines would be manifestly unjust or inequitable. The final judgment also failed to include the language necessary to support an award under Rule 32(C)(4). Therefore, requiring the [former] wife to pay one-half of [the child]’s extracurricular expenses is unsupported by the record and was error.”
40 So.3d at 733.
To the extent that the father is arguing that the additional child-support awards should be reversed because the trial court failed to include the specific findings required by Rule 32(A)(ii) and Rule 32(C)(4); Ala. R. Jud. Admin., in the divorce judgment, the father is making that argument for the first time on appeal, and, therefore, we cannot consider it. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate c]ourt cannot consider arguments raised for the first time on appeal. ...”). However, we will consider the father’s argument that the additional child-support awards were not supported by the evidence. Our review of the record reveals that evidence was presented to rebut the presumption created by the guidelines and that would support a finding that the *996 additional awards are in the best interest of the children.
It was undisputed that the mother and the father desired that the son remain enrolled at his private school, that the son loved the school, that he was very involved in the school, that he had attended that school for seven years, and that he excelled in that school. Likewise, regarding the son’s extracurricular activities, it was undisputed that the son was an excellent athlete and that both parties had encouraged his participation in numerous extracurricular activities. However, a consideration of whether an additional award of child support serves the best interest of a child must also take into account each party’s ability to contribute an additional amount of child support above what the child-support guidelines recommend. See Travis v. Travis, 345 So.2d 321, 323 (Ala.Civ.App.1977) (“It will not serve the interest of the children to order payment of child support or private school tuition in an amount which the evidence clearly indicates is beyond the ability of appellant to pay.”). This court has held that a trial court “may not order support payments that compel a party to sacrifice all of his income, leaving little or none to support himself.” Harris v. Harris, 590 So.2d 321, 323 (Ala.Civ.App.1991).
The father argues that the mother did not demonstrate a need for additional child support because the son’s tuition expense and expenses related to his extracurricular activities were included in her monthly expenses, and, he argues, the evidence presented indicates that the mother can meet her monthly expenses with the award of child support pursuant to the guidelines in addition to her monthly net income. There was evidence presented, however, that would have supported a conclusion that the mother could not meet her monthly expenses, even considering the award of child support. Although it was undisputed that, while the proceedings were pending below, the mother had paid all the son’s tuition expenses and the vast majority of his extracurricular-activity expenses without assistance from the father, it was also undisputed that the mother was frequently behind on the monthly mortgage payment. Furthermore, the record indicates that the father had been paying the mother an additional $51 over his child-support obligation during the year before the divorce judgment was entered that he is no longer required to pay. Finally, even if the mother is somehow able to pay the tuition and extracurricular-activity expenses without assistance from the father, the trial court could have concluded, in light of the evidence of the parties’ joint decisions to send the son to private school and to have the son involved in numerous extracurricular activities, that the mother should not be required to bear the entire burden of these additional expenses without the father’s assistance if the father has the ability to contribute to the additional expenses.
Furthermore, the trial court could have concluded that the father has sufficient income to support an award of additional child support. In the divorce judgment, the trial court ordered the father to pay one-half of the “tuition for the [son] at Shoals Christian School as long as the [son] remains enrolled there.” The evidence presented indicated that the cost of tuition to the father would equal one-half of $455 a month for 11 months, or approximately $2,500 a year, or approximately $208 a month for 12 months. In addition, the father was ordered to pay one-half of “all expenses for extracurricular activities of the ... children, including, but not limited to sports, band, and scouts.” The mother presented evidence indicating that she had paid approximately $434 in the year 2010, or approximately $36 a month, *997 related to extracurricular-activity expenses for the son and that she had purchased a trombone for the child so that he could participate in band. The total purchase price for the trombone under the “rent-to-own” agreement entered into by the mother was $1,027.95 after the mother paid a down payment.[4] The father was ordered to pay one-half of the cost of the trombone, or $514, which is equivalent to approximately $43 a month. Considering these costs together, the father’s extracurricular-activity expenses would equal approximately $61 a month ($18 a month + $43 a month).[5] Considering the tuition expense and the extracurricular-activity expenses together, we estimate that the father’s responsibility in addition to the amount of child support pursuant to the guidelines would be approximately $270 a month.
The father argues, as he did below, that he cannot afford to pay any additional sums for the support of the children. Based on the judgment entered by the trial court, it is apparent that the trial court did not believe that the father was unable to contribute to the son’s private-school tuition and the extracurricular-activity expenses of the children. In light of the testimony concerning the ending date of the father’s most recent affair, we find no error in the trial court’s disbelief of the father’s assertion that he could not afford to contribute any additional child support. See Summers v. Summers, 58 So.3d 184, 188 (Ala.Civ.App.2010) (“It is the province of the trial courts to estimate the credibility of witnesses, and if the trial court concludes that a witness was willfully untruthful, that court may disregard any or all of that witnesses’s testimony.”).
The father contends that, based on the evidence presented at the ore tenus hearing, the difference between his net income and his expenses equals only $110 a month.[6] The father’s list of monthly expenses allotted $900 a month for food and an additional $75 a month for lunches and snacks for the son during the son’s periods of visitation with the father. Although the father indicated that he purchased groceries for his mother in return for her allowing him to stay in her home, the father’s mother testified that she used $500 of the $800 a month that the father gave her to cover his living expenses, such as groceries and household bills. However, the father did not include an $800 monthly payment to his mother in his list of monthly expenses. Thus, it is not clear what the father’s actual monthly obligations are. If we take the father’s list of expenses, add an $800-a-month payment to his mother for groceries, living expenses, his car payment, and his car repairs, add $270 a month for tuition and extracurricular-activity expenses, and take out the $900-a-month cost for additional food, the cost of utility bills at his mother’s residence, and his vehicle payment and repairs, then the *998 father is left with $241 a month for additional food or groceries for himself in addition to the groceries purchased with part of the $500 he gives to his mother.[7] We note that the father included in his list of monthly expenses $75 a month for gifts for the children, $50 a month for household supplies, $100 a month for clothing, and $110 a month for insurance to cover two vehicles and a boat, despite the fact that one vehicle and the boat were inoperable at the time of the ore tenus hearings.[8] Thus, the trial court could have concluded that the father had the ability to pay the additional child support.
The father also challenges the trial court’s judgment insofar as it ordered him to repay the mother for a portion of the son’s trombone and the son’s tuition expense that the mother had paid during the pendency of the action. The father bases his argument on the fact that he paid the mother $1,500 a month from August 2009 through August 2010, i.e., $451 above his child-support obligation, and that he paid the mother $1,100 a month from September 2010 through the entry of the divorce judgment, i.e., $51 above his child-support obligation. We note, however, that the trial court’s preliminary order required the parties to “pay child support in accordance with Rule 32” and to continue to “contribute to the payment of monthly expenses in the amounts and in the manner they did when they were cohabitating as husband and wife.” It was undisputed that the only contribution to household expenses that the father made above his Rule 32 child-support obligation is $451 a month for 1 year, and $51 a month for 1 year. Thus, the trial court could have concluded that those amounts were not additional amounts for child support, but only contributions to the household expenses that he was required to pay by its preliminary order. Regardless, our review of the record reveals that the father did not make the same argument below that he makes on appeal. See Andrews, supra. The only part of his postjudgment motion that could be construed as a challenge to the retroactive payment of tuition and extracurricular-activity expenses are the general allegations that the awards of additional child support are unsupported by the evidence, which have been addressed above. Thus, we find no merit to this argument.
Accordingly, we reverse the trial court’s judgment insofar as it failed to craft a holiday visitation schedule that served the best interests of the children, and we remand the cause for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.
Appellant’s request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., recuses herself.

. Lauderdale County has different "standard” visitation schedules for children under three years of age and for children over three years of age. The daughter was two years old when the divorce judgment was entered, but while this case was pending on appeal, the daughter turned three years old. Thus, we will consider the father’s visitation schedule with the daughter based on the standard visitation schedule for children over the age of three.

. The father was awarded visitation with the daughter every other weekend and visitation from 4:00 p.m. until 8:00 p.m. every other Tuesday.

. That is not to say, however, that the father could not request a modification of his visitation with the daughter in the near future when the daughter is older and has had the chance to adjust to life in two different homes.

. The father argues that the trial court should have ordered him to pay one-half of $857.15, which was the purchase price for the trombone. Apparently, a "rental charge” was added to the purchase price to make the balance due $1,027.95. However, the father did not make this argument to the trial court; therefore we cannot consider it on appeal. See Andrews v. Merritt Oil, supra.

. We note, however, that, once the trombone is paid for, the father’s cost would be significantly reduced.

.During the ore tenus hearing, the father stated that his net income totaled $4,100 a month and that his expenses totaled $4,040 a month, a difference of only $60 a month. However, we note that the father's child-support obligation is only $1,049 a month instead of the $1,100 amount that he had included into his monthly budget; accordingly, the difference between the father’s income and his expenses is now approximately $110 a month.

. According to the father’s list of expenses, he paid his mother only $50 a month for utility bills; thus, the trial court could have concluded that a significant amount of the $500 that he gave to his mother went toward the purchase of groceries.

. For purposes of comparison, the mother allotted only $600 a month for groceries, diapers, and clothing in her list of monthly expenses for herself and the children.